[Civ. No. 1068. Fifth Dist. June 2, 1969.]

MARSHALL L. GANZ, Plaintiff and Appellant, v. THE JUSTICE COURT FOR THE ARVIN-LAMONT JUDICIAL DISTRICT OF KERN COUNTY, Defendant and Respondent; THE PEOPLE, Real Party in Interest and Respondent.

Michael J. Brennan, Paul Driscoll and James F. Smith for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Jack R. Winkler, Deputy Attorney General, for Real Party in Interest and Respondent.

CONLEY, P. J.—In this proceeding, the plaintiff appeals from the denial by the Superior Court of Kern County of a writ to forbid the Justice Court of the Arvin-Lamont Judicial District from using its general jury panel for a specific criminal trial. Marshall L. Ganz, the appellant, was originally charged in that court with failure to yield the right of way at an intersection (Veh. Code, § 21800, subd. (b)). The defendant entered a not guilty plea and demanded a jury

trial. The demand was granted and the case was set for trial on January 3, 1968. On January 2, 1968, appellant challenged the entire jury panel (Pen. Code, § 1058), on the ground "that there are material departures from the forms prescribed in respect to the drawing and return of the jury." (Pen. Code, § 1059.) The justice of the peace denied the challenge and trial was reset for March 22, 1968. It was later continued without date at the request of the appellant in order to permit a hearing in the superior court on the question whether or not a writ of prohibition should be directed to the justice court preventing it from taking further proceedings with its present jury panel in the criminal action. On March 27, 1968, the Kern County Superior Court directed respondent justice court to show cause why a peremptory writ of prohibition should not issue. A return was made by the filing of a demurrer and an answer; the latter pleading was later amended to correct· clerical errors.

The demurrer was argued on May 15, 1968, and on June 5, 1968, it was sustained without leave to amend on the grounds:

"There is no showing that the method used to select a jury panel denies the Petitioner, Marshall L. Ganz, an impartial jury. There is no showing that there is a systematic exclusion of persons or classes of persons to which Petitioner belongs.

"Sustained without leave to amend on Ground II, Page 2 of demurrer, that the Petition does not state a cause of action as a matter of law."

A judgment dismissing the petition for a writ of prohibition was entered on July 25, 1968, and a notice of appeal to this court was filed on July 30, 1968.

The petition alleges that Marshall L. Ganz was charged with a traffic offense in the justice court and that his challenge of the entire jury panel was denied. It is further said that denial of said motion exceeded the respondent justice court's jurisdiction because it deprived appellant of his right to trial by a fair and impartial jury ". . . in that certain definite and identifiable groups in the district are excluded from jury service by the method used to select jurors for the jury list."

It is claimed that the petitioner "has no plain, speedy or adequate remedy in the ordinary course of law," and further alleged (A) that jury panels in said justice court are drawn solely from the list of registered voters of Kern County; (B) that the "percentage of persons with Spanish surnames on the jury lists for the Arvin-Lamont Judicial District for the years 1963 up to and including 1967 varied from a high of 4 percent

to a low of 2.5 percent in 1967''; (C) that a study conducted by the Fair Employment Practices Commission based on the 1960 United States Census indicates that 10 percent of the total population of Kern County then had Spanish surnames; (D) that the telephone directory for the City of Arvin indicates that nine percent of the telephone users are persons with Spanish surnames; (E) that the records of the Lamont Water and Sewage District show that 21 percent of the persons receiving such services have Spanish surnames; and (F) that the Pacific Gas and Electric Company has customers with Spanish family names consisting of 18 percent of 2,000 subscribers. The appellant contends that his petition stated a cause of action, and that the sustaining of the general demurrer was error; he also claims that the court abused its discretion in not giving him leave to amend.

*While a writ of prohibition may be requested to prevent trial by the use of an alleged unconstitutional jury panel, practical considerations make the granting of such a remedy unwise except in unusual cases.*

 The Attorney General has alleged in his brief, without contradiction, that petitioner has not cited any instance in which a criminal trial has been halted by a writ of prohibition on the ground urged here. It is proper, therefore, to consider briefly whether such a writ may be applied for in a situation of this kind. The practice of using a writ of prohibition to halt a proposed trial has grown remarkably in recent years, due to the fact that if it is apparent that improper methods are being employed in a prosecution, the postponement of their consideration until appeal after judgment results in lost time and consequent damage to the participants as well as to the judicial system of the State of California. It has been held, for example, that prohibition is a proper remedy to test venue (*Van Zanten* v. *Superior Court,* 214 Cal.App.2d 510 [29 Cal.Rptr. 625]), to prevent the retrial of a defendant who has been once in jeopardy (*Paulson* v. *Superior Court,* 58 Cal.2d 1, 5 [22 Cal.Rptr. 649, 372 P.2d 641]), to restrain prosecution under an unconstitutional statute or ordinance (*Canon* v. *Justice Court,* 61 Cal.2d 446, 450 [39 Cal.Rptr. 228, 393 P.2d 428]), and to ascertain whether a defendant was committed for trial without probable cause (*Mardis* v. *Superior Court,* 218 Cal.App.2d 70, 72 [32 Cal.Rptr. 263]); but, the Attorney General assures us that every case found in California in which discrimination in the selection of a jury is discussed

arose by an appeal after conviction (*People* v. *Durrant*, 116 Cal. 179, 199 [48 P. 75]; *People* v. *Vaughn*, 14 Cal.App. 201, 205 [111 P. 620]; *People* v. *Manuel*, 41 Cal.App. 153, 155 [182 P. 306]; *People* v. *Shannon*, 203 Cal. 139, 142 [263 P. 522]; *People* v. *Hines*, 12 Cal.2d 535 [86 P.2d 92]; *People* v. *Parman*, 14 Cal.2d 17, 19 [92 P.2d 387]; *People* v. *Jackson*, 88 Cal.App.2d 747, 751 [199 P.2d 322]; *People* v. *Hernandez*, 100 Cal.App.2d 136, 137 [223 P.2d 76]; *People* v. *Hess*, 104 Cal.App.2d 642, 669 [234 P.2d 65]; *People* v. *White*, 43 Cal.2d 740, 748 [273 P.2d 9]; *People* v. *Carter*, 56 Cal.2d 549, 568 [15 Cal.Rptr. 645, 364 P.2d 477]; *People* v. *Mason*, 259 Cal.App.2d 30 [66 Cal.Rptr. 601]).

While the Attorney General raises the question whether a cause of action for prohibition founded on discrimination in jury selection may be stated at all, we do not concur with him in his doubt concerning the answer. There is no reason why a petition for a writ of prohibition cannot be filed in objecting to an unconstitutional and improper jury panel. However, this case itself furnishes a good example of the delay and consequent basic interference with the functions of the criminal courts that result from an application for a writ of prohibition with respect to the jury panel assigned to a given case. Here, the defendant was accused of a relatively minor breach of the law in August of 1967, and the trial has not been held and will be delayed for a considerable period of time still, because of the question whether the proposed jury panel is proper. It is apparent, furthermore, that a court is much better able to answer the question whether a defendant's jury panel is fair after trial rather than before. It, therefore, seems clear to us that the courts should not hesitate to invoke their discretionary right to refuse the issuance of a writ of prohibition before trial in cases of this caliber. The right to challenge a jury panel in advance through application for a writ of prohibition exists, but common sense would indicate that it should not be frequently asked for or granted.

 It is the policy of the federal and state governments throughout the country to provide a fair and unprejudiced jury for the trial of any case, criminal or civil. As a consequence, there has grown up a basic viewpoint with respect to the quality of juries which is perhaps well phrased as anywhere else by Congress in the Jury Selection and Service Act of 1968 (Public Laws 90-274; 82 Stats. 53), where sections 1861 and 1862 read as follows:

"§ 1861. Declaration of policy

"It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes. It is further the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose.

"1862. Discrimination prohibited

"No citizen shall be excluded from service as a grand or petit juror in the district courts of the United States on account of race, color, religion, sex, national origin, or economic status."

When the principles of the foregoing declaration of policy are observed, much is left to the wise discretion of the trial judge and the attorneys in selecting a jury. The statutory right of counsel to exercise challenges for cause and peremptory challenges also gives wide scope to persons tried in the criminal courts to secure juries that are fair and competent.

*The sustaining of the demurrer without leave to amend was proper for the reasons hereinafter stated.*

(A) *The petition did not state a cause of action as it did not and could not allege that the plaintiff was a member of a class discriminated against.*

The petitioner has described himself as a "Jewish man" and his complaint with respect to the jury panel is that there are not sufficient people with Spanish names on it to correspond mathematically with the proportion of such named people in the district. Counsel for the petitioner contend that if the proportion of persons on the jury panel is not in line with the actuality of Spanish named persons in the vicinity this "Jewish man" is constitutionally entitled to challenge the entire jury.

In criminal trials, the rights of the defendant who is being tried are at issue. A defendant is entitled, from his standpoint, to a fair jury. The defendant is not an assistant to the court, or the sheriff or the jury commissioner. Generally speaking, defendants are not charged in an abstract matter with securing juries that comply with the laws; they are entitled, under the federal and state Constitutions, to juries which, from the standpoint of such defendants, comply with their right to a fair trial. It is, therefore, necessary in

620

a case like this, as an essential part of the challenge to the panel, that a defendant bring himself in his petition within the class concerning which he is complaining. The defendant here did not do this. The petition is silent with respect to how he believes that he is prejudiced through the fact that more people with Spanish names are not on the jury panel. In the oral argument made in this court, counsel for the appellant stated that Mr. Ganz is aligned with former employees of vineyards in the Kern County area who are striking, and that, as there are many Mexicans with Spanish names in this classification, he thinks he would be better off to have more people with Mexican names on his jury. However, even this is not alleged in the petition; furthermore, it is by no means certain that there are not many people with Mexican names who are opposed to the strike. This is a remote and personal reason in any event why Mr. Ganz would like to see more Mexicans or Spaniards on the jury. It is too far removed from a precise showing of actuality for us to accede to the argument, even if it had been made in the petition.

In *People* v. *White*, 43 Cal.2d 740, 753 [273 P.2d 9], the general rule in this state is thus expressed: "It is generally recognized that as a general rule, errors and irregularities in making up a jury list will not invalidate the list when the person objecting is not a member of the group discriminated against. [Citing authority.]" As stated in *People* v. *Hess*, 104 Cal.App.2d 642 [234 P.2d 65], "a defendant cannot complain if he is tried by an impartial jury and can demand nothing more."

The United States Supreme Court apparently made the same assumption in *Eubanks* v. *Louisiana*, 356 U.S. 584, 585 [2 L.Ed.2d 991, 993, 78 S.Ct. 970], when it said: "In an unbroken line of cases stretching back almost 80 years this Court has held that a criminal defendant is denied equal protection of the laws guaranteed by the Fourteenth Amendment if he is indicted by a grand jury or tried by a petit jury from which members of *his* race have been excluded because of *their* race." [Italics added.]

The ruling of the trial court is supported by the fact that the appellant does not allege that he is one of the race discriminated against or that, because people with Spanish names are not more plentiful on the panel, it is unconstitutional. We conclude that, under the laws of the State of California, the challenger of a jury panel must show that he himself is likely to be prejudiced by whatever factors are objected to in the situation.

Admittedly, there is a different viewpoint in some other jurisdictions. (*Thiel* v. *Southern Pac. Co.,* 328 U.S. 217 [90 L.Ed. 1181, 66 S.Ct. 984, 166 A.L.R. 1412]; *Labat* v. *Bennett,* 365 F.2d 698, 723; *Allen* v. *State,* 110 Ga.App. 56 [137 S.E.2d 711]; *State* v. *Madison,* 240 Md. 265 [213 A.2d 880].) But California law is as stated.

(B) *Purposeful discrimination should have been alleged.*

█ Generally speaking, administrative application of a constitutional statute denies equal protection only if the situation complained of is intentionally or deliberately discriminatory. (*Snowden* v. *Hughes,* 321 U.S. 1, 8 [88 L.Ed. 497 502, 64 S.Ct. 397]; *Oyler* v. *Boles,* 368 U.S. 448 [7 L.Ed.2d 446, 82 S.Ct. 501].) █ There are no allegations in the present petition showing a purposeful discrimination. Several recent opinions of the United States Supreme Court have used the adjective "purposeful" in qualifying the alleged discrimination. (*Swain* v. *Alabama,* 380 U.S. 202, 203 [13 L.Ed.2d 759, 763, 85 S.Ct. 824]; *Whitus & Davis* v. *Georgia,* 385 U.S. 545 [17 L.Ed.2d 599, 87 S.Ct. 643].) This term should have qualified the allegation of discrimination if it existed. This much, however, is certain: the omission could have been cured easily by amendment, and if this were the only defect in the petition the ruling should have allowed the petitioner the right to amend.

(C) *The petition was faulty in not alleging a separate class discriminated against.*

█ There is no showing in the petition that any group in the community is a class discriminated against. Such an allegation, if true, should have been made, and the evidence adduced should have shown that it was indeed a fact. (*Hernandez* v. *Texas,* 347 U.S. 475 [98 L.Ed. 866, 74 S.Ct. 667].) However, such an absence of proper allegations could have been cured by an amendment, and it, therefore, is not as important as it would otherwise be.

(D) *The allegation relative to the failure to compose the jury panel in accordance with the prevalence of Spanish names in the district does not show that it is unconstitutional.*

█ It is clearly established that juries are not to be made up on any theory of proportional representation. (*Akins* v. *Texas,* 325 U.S. 398, 403 [89 L.Ed. 1692, 1696, 65 S.Ct. 1276]; *Cassell* v. *Texas,* 339 U.S. 282, 286-287 [94 L.Ed. 839, 846-847, 70 S.Ct. 629]; *Swain* v. *Alabama, supra,* 380 U.S. 202, 208 [13 L.Ed.2d 759, 766, 85 S.Ct. 824]; *People* v. *White,*

43 Cal.2d 740, 749 [273 P.2d 9].) But, even if this were not true, the allegations in the petition relative to the fact that the percentage of people with Spanish names in the district is greater than the proportion of Spanish-named persons on the jury panel would not establish discrimination. A brief reflection clearly indicates that this statement is accurate. Spanish names which, generally speaking, are identical with Mexican names, although Spain and Mexico are thousands of miles apart, are under different governments and frequently are people with different racial make-ups, do not in this "melting pot" of ours establish much, if anything. Let us suppose a hypothetical case: German or Irish immigrants of many generations have a daughter, who, when grown up, marries a man with a Spanish name and has five children, who become qualified to act as jurors; all of the six have a Spanish name, but their racial inheritance is not by any means totally or necessarily Spanish. Under appellant's proposed system of jury selection, should the German or Irish wife and her five children be counted as Spanish or Mexican because they have a Latin name? Would effective proportional representation be based on nationality or on some other proscribed basis such as linguistic similarity of names?

(E) *The case of People v. White supports the conclusion of the trial court rejecting a writ of prohibition.*

 Whatever may be said about the laws and decisions in other jurisdictions, the State of California has a judicial system of its own and the laws, which have been established by the Legislature and noted in the opinions of the courts of this state, must control the present action, unless, of course, the United States Supreme Court has enunciated some control rule based on the federal Constitution which is at variance with the laws of California.

*People v. White, supra,* 43 Cal.2d 740, considers the selection of juries in California. Among the many common-sense propositions pointed out in the opinion it is said at page 753: "Even though the jury panel in question may have been selected in an improper manner it cannot be said that its actual composition resulted in any substantial prejudice to the defendant by reason of the exclusion of members of the group to which defendant belonged." It is also stated at page 754: "The American system requires an impartial jury drawn from a cross-section of the entire community and recognition must be given to the fact that eligible jurors are to be found in every stratum of society. In selecting a truly representative

jury panel, the membership lists of various clubs and organizations may properly be used, but they should not be relied on as the principal source of prospective jurors nor should they be used to the complete exclusion of other general sources more likely to represent a cross-section of the population, such as telephone directories, voting lists, and city directories. Any system or method of jury selection which fails to adhere to these democratic fundamentals, which is not designed to encompass a cross-section of the community or which seeks to favor limited social or economic classes, is not in keeping with the American tradition and will not be condoned by this court." These observations are prospective as well as retrospective.

(F) *The exclusive use of voters lists was not discriminatory.*

The use of voters lists from which to select a jury panel has been approved in many cases. (See: *United States* v. *Van Allen,* 208 F.Supp. 331, 334; *Gorin* v. *United States,* 313 F.2d 641, 644; *United States* v. *Brown,* 281 F.Supp. 31, 38; *People* v. *Hess,* 104 Cal.App.2d 642, 669-670 [234 P.2d 65].)

The petitioner alleges that article II, section 1, of the California Constitution provides in part: ". . . no person who shall not be able to read the Constitution in the English language and write his or her name shall ever exercise the privilege of an elector in this state."

And he alleges further that as section 198 of the Code of Civil Procedure provides that: "A person is competent to act as a juror if he be: [among other things] . . . 3. Possessed of sufficient knowledge of the English language," many people have a sufficient knowledge of spoken English to qualify as jurors, even though their standing as linquists is not as good as that of voters. This, it seems to us, is a false assumption; the required qualification of citizens to become voters is not very exacting. It might well be that the requirements to act as jurors from a practical standpoint are more stringent than the requirements to act as voters. This much is certain: we should have jurors who are fully able to understand spoken and written English on our juries, if justice is to be achieved.

(G) *Sustaining general demurrer without leave to amend was proper.*

 As heretofore shown, in paragraph (A), the petitioner could not have alleged that a "Jewish man" was

injured by the fact that there were not enough people with Spanish names on the jury panel. The court's conclusion that it was not proper to grant leave to amend the petition was, therefore, valid. Furthermore, the mere fact that there were not more people with Spanish names on the jury panel was not a ground to grant the petition for a writ of prohibition, and it would have been impossible by amendment to allege a valid ground for so acting.

The judgment of dismissal is affirmed.

Stone, J., concurred.

Gargano, J., deeming himself disqualified, did not participate.