[Civ. No. 36021. Second Dist., Div. Five. Aug. 7, 1970.]

CARLOS MONTEZ et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Oscar Zeta Acosta, Neil M. Herring, Margolis, McTernan, Smith, Scope & Herring and Hugh R. Manes for Petitioners.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Arnold T. Guminski, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

KAUS, P. J.—In May 1969 the Los Angeles County Grand Jury handed down a six-count indictment charging petitioners with a variety of serious

felonies. Each petitioner was named in at least one count. Eventually petitioners moved to quash the indictment on the ground that the grand jury had been illegally constituted in that eligible grand jurors of a class to which petitioners belong, namely, "Spanish-surnamed Mexican American citizens" had been systematically excluded from consideration for nomination to the grand jury.[1] At the hearing it was stipulated that the court could consider the record made before another judge in another case, People v. Castro et al., in which a similar claim with respect to the 1968 grand jury had been made by the defendants in that case, some of whom are also petitioners in this proceeding.[2] There is also some overlapping of legal representation. In People v. Castro the defendants had called 34 Los Angeles County Superior Court judges as witnesses to support their contention.[3] Significantly at the time the motion in the case at bar was heard, the People had already argued in the prohibition proceeding in Castro that the defendants there had not called an adequate number of judges. The reason for calling judges as witnesses on motions such as these is that each judge in Los Angeles County is annually entitled to nominate two persons to the grand jury. (Rule 29 § 2, Rules of Superior Court, Los Angeles County.)[4]

Before the proceedings in the case at bar started on October 7, 1969, the defense had subpoenaed 70 superior court judges as witnesses.

[1] A written motion was filed. In that writing, the basis for the motion was "that there has been, and to the present still exists, an unconstitutional underrepresentation of defendant's [sic] peer group of American citizens of Spanish surname. . . ." At the subsequent hearing petitioners expressly abandoned any claim that they had any right to "proportional representation" on the grand jury or even on the body of nominees from which the grand jurors were chosen. (See Swain v. Alabama, 380 U.S. 202, 208 [13 L.Ed.2d 759, 766, 85 S.Ct. 824]; Cassell v. Texas, 339 U.S. 282, 286-287 [94 L.Ed. 839, 846-847, 70 S.Ct. 629] (opinion of Mr. Justice Reed, announcing judgment).) Orally the motion was phrased as follows: ". . . If the court please, for purposes of the record, this is a motion to quash the indictment at bar upon the grounds of a systematic exclusion of a class, based on race, color, national origin, to wit, Mexican-Americans, persons with Spanish surnames, persons of Latin-American ancestry, all in violation of the 14th Amendment of the United States Constitution and the co-relative provisions of the State Constitution, and the equal protection clauses thereof. . . ."

[2] The Castro case also reached this court in a prohibition proceeding. Our opinion (Castro v. Superior Court, 9 Cal.App.3d 675 [88 Cal.Rptr. 500]) was filed on July 17, 1970. We did not reach the merits of the attack on the grand jury.

[3] The record in this case does not show whether any of the 70 judges subpoenaed had testified in Castro.

[4] It should be noted that it is not so much the Penal Code provisions for the selection of grand jurors, but the local rule which makes every single judge of the respondent court a "selector" of the grand jury who has relevant information on an issue of unconstitutional discrimination in the selection process.

They were placed "on call" by the judge who heard the motion.[5] During the ensuing hearing petitioners called six other witnesses, one of whom was the judge presiding over the hearing. One of the purposes of calling the judge was to illustrate, as part of an offer of proof on which the court insisted, what questions petitioners intended to propound to the 70 judges under subpoena.

In the *Castro* case which, as noted, was an attack on the 1968 grand jury, the defendants had made a massive effort to prove: (1) that Spanish-sur-named persons were an identifiable class and that Spanish-surnamed persons of Mexican extraction were an identifiable subclass; (2) that a prima facie case of discrimination against members of that class in the process of selecting grand jurors in Los Angeles County could be proved by com-paring certain statistics respecting grand jury nominees covering the 1959-1968 period with the size of the class as a segment of the population of Los Angeles County; and (3) that, statistics aside, the method of selecting grand jurors employed in Los Angeles County discriminated against the class.

At the hearing in the case at bar it appeared that members of peti-tioners' class were better represented among the nominees for the 1969 grand jury than they had been, on the average, during the preceding 10 years. Finding that statistically petitioners had not proved a prima facie case of discrimination based on the 1969 figures alone, the trial court ruled that any other evidence became immaterial.[6] It had previously repeatedly an-

---

[5]Petitioners assert that this was done without notice to them. The record does not necessarily support them. There is intrinsic evidence in the transcript that there must have been certain discussions between the court and counsel before they went "on the record." While petitioners' counsel asserted at various times that the action was taken without his consent—an assertion which was never contradicted—he never did claim that it was done without notice. In any event the point involves, at most, etiquette. Petitioners were given every opportunity to convince the court that they were entitled to question the judges and there is no doubt that, had the court agreed with them, the judges would have been made available as witnesses.

[6]"The Court finds that for the 1969 Grand Jury, ten persons of Spanish surname have been nominated, of which I believe six or seven were considered as Mexican-Americans. Therefore, it cannot be said that Mexican-Americans or persons with Spanish surnames were excluded from the 1969 Grand Jury. In view of that fact, I will hold that it is immaterial what has preceded the 1969 Grand Jury, as long as the 1969 Grand Jury that indicted these defendants were [*sic*] properly chosen, and in my opinion they were. The rest becomes immaterial. So the motion to quash will be denied. . . ." The People concede that this finding is based on implied findings that petitioners had established that they were members of a legally cognizable class (*Hernandez* v. *Texas*, 347 U.S. 475, 477-478 [98 L.Ed. 866, 869-870, 74 S.Ct. 667]) and that seven members of that class were among the one hundred and eighty-plus nominees for the 1969 grand jury. There is some argument in the record concerning the percentage of the population comprised by the class and some more argument

nounced that it would not permit petitioners to interrogate the 70 judges as witnesses unless it could find evidence of discrimination from the 1969 figures.

We believe that petitioners justly complain that the court's ruling, in effect, permitted them to call their judicial witnesses only if the statistical evidence made it unnecessary for them to do so.

■ Traditionally, in this type of attack on the composition of grand or petit juries, the statistical evidence, if sufficiently probative, has been given the effect of making a prima facie case for the attackers, shifting the burden onto the prosecution's shoulders. (E.g., *Sims* v. *Georgia,* 389 U.S. 404, 407-408 [19 L.Ed.2d 634, 637-638, 88 S.Ct. 523]; *Eubanks* v. *Louisiana,* 356 U.S. 584, 586-588 [2 L.Ed.2d 991, 993-995, 78 S.Ct. 970].) It then becomes incumbent on the defenders of a particular selection or selection system to adduce evidence to overcome the prima facie case. We need not concern ourselves with the type of evidence which is adequate to meet that burden. (See *Norris* v. *Alabama,* 294 U.S. 587, 598 [79 L.Ed. 1074, 1081, 55 S.Ct. 579].) Often the attempt consists of the production of the selectors, be they jury commissioners (e.g., *Brown* v. *Allen,* 344 U.S. 443, 480-482 [97 L.Ed. 469, 501-502, 73 S.Ct. 397]) or judges (e.g., *Eubanks* v. *Louisiana, supra,* 356 U.S. 584, 587-588 [2 L.Ed.2d 991, 994-995]). However, no case brought to our attention, has ever precluded the attackers from producing the selectors as their own witnesses, if their statistical case was found inadequate to shift the burden.

■ The record makes it clear that the respondent court misunderstood the significance of statistical evidence in cases where a jury, grand or petit, is attacked for alleged discrimination in its composition. The final ruling (see fn. 6, *ante*) indicates that the court felt that the mere fact that a respectable percentage of persons of petitioners' class had been nominated, conclusively disproved discrimination. Of course, that can only be so if roughly proportional representation is equated with lack of discrimination—but that cannot be. The presence of ten nominees of a certain class merely proves that a maximum of ten and a minimum of five judges did not discriminate against the class—but no one would contend that a grand jury would be constitutionally constituted if all the other

concerning the percentage of members of the class eligible for grand jury service. We have no need to settle these controversies. While it does appear that even if we give the People the benefit of every doubt, petitioners' class was still underrepresented in 1969, for the purpose of this opinion we readily accept the proposition that the 1969 underrepresentation was insufficient to make out a prima facie case of discrimination. Nor need we decide the extent to which petitioners, in order to make out such a prima facie case from statistics alone, were entitled to rely on the 1959-1968 figures as well as on the 1969 comparison.

judges of the court[7] intentionally and arbitrarily failed to consider members of the class whether or not they qualified for the nomination. Yet it seems clear from the record that the court would not permit petitioners to go behind the cold statistics, whatever their import. Repeated remarks to that effect are copied in the footnote.[8]

Just as mere numbers on one grand jury list do not establish a legal selection process, so does underrepresentation of a defendant's class on a jury not automatically and conclusively prove its illegality. As noted (see fn. 1, *ante*) there is no right to proportional representation. ■ "Defendants under our criminal statutes are not entitled to demand representatives of their racial inheritance upon juries before whom they are tried. But such defendants are entitled to require that those who are trusted with jury selection shall not pursue a course of conduct which results in discrimination 'in the selection of jurors on racial grounds.' [Citation omitted.] Our directions that indictments be quashed when Negroes, although numerous in the community, were excluded from grand jury lists have been based on the theory that their continual exclusion indicated discrimination and not on the theory that racial groups must be recognized. [Citations omitted.] ■ The mere fact of inequality in the number selected does not in itself show discrimination. A purpose to discriminate must be present which may be proven by systematic exclusion of eligible jurymen of the proscribed race or by unequal application of the law to such an extent as to show intentional discrimination. . . ." (*Akins v. Texas*, 325 U.S. 398, 403-404 [89 L.Ed. 1692, 1696-1697, 65 S.Ct. 1276].)

■ Petitioners made it perfectly plain that they did not contend that constitutionally they were entitled to have even a single member of their

---

[7] The 1967 Legislature fixed the number of superior court judges for Los Angeles County at 134. (Gov. Code, § 69586.)

[8] "THE COURT: Well, I will repeat what I said at the start, Mr. Acosta. If I come to the decision that there was discrimination in the nominations for the 1969 Grand Jury, which is the Grand Jury that indicted these defendants, it will then become pertinent as to whether it is an intentional, arbitrary and systematic exclusion or discrimination over a period of time. MR. ACOSTA: Now, is your Honor going to make this decision prior to the calling of any judge witnesses? THE COURT: Yes. . . . So far as I am concerned, if there is no discrimination of the 1969 Grand Jury, then these defendants were indicted by a validly constituted Grand Jury. MR. MANES: Well, excuse me a moment, your Honor. How can you reach that decision, your Honor, without having afforded us the opportunity of completing our case? Now, we have yesterday at great length tried to show your Honor that the evidence in its present posture insofar as we are concerned is incomplete because we wanted to rely, in addition to statistical evidence, we wanted to rely upon standards which were used by the selectors selecting and nominating the Grand Jury for 1969. THE COURT: I think it is a simple proposition. Were there Mexican-Americans or Spanish, people with Spanish surnames on the Grand Jury that indicted these people."

class among the grand jury nominees. What they did contend and offered to prove was that the system of nominating grand jurors employed in Los Angeles County systematically deprived eligible members of their class from being considered for grand jury duty. In a nutshell they intended to show that, with very few exceptions, the judges of the respondent court were by reason of birth, education, residence, wealth, social and professional associations and similar factors not acquainted with the qualifications of eligible potential grand jurors of petitioners' class and that they did not make an adequate effort to overcome this alleged deficiency.[9] In this effort petitioners unquestionably were on safe ground. In *Cassell* v. *Texas,* 339 U.S. 282, 285 [94 L.Ed. 839, 846, 70 S.Ct. 629], the statistical case proved that "as a proportional matter 6.5% of grand jurors would be Negroes" while actually, over a five-year period, 6.7 percent had been black. Nevertheless the grand jury was held to have been constitutionally inadequate because the testimony of the jury commissioners revealed that in selecting nominees they did not adequately acquaint themselves with the qualifications of eligible jurors of the Negro race in order that they might comply with the constitutional mandate that the jury be selected in such a way that "there has been neither inclusion nor exclusion because of race." (339 U.S. at p. 287 [94 L.Ed. at p. 847].)

It should be noted that the People do not contend that petitioners had made an adequate record by offering the *Castro* record which contained the testimony of 34 judges and that the additional testimony was merely cumulative. They could hardly do so in view of the fact that none of the 34 had testified with respect to the 1969 grand jury while, on the other hand, the respondent court refused to consider evidence related to any period before 1969 unless petitioners first proved discrimination in the composition of the grand jury of the latter year.[10]

The People insist that petitioners' point must fail because they did not make an adequate offer of proof. To this contention there are several answers.

First the court's remarks throughout the proceeding made it abundantly

---

[9]We are not saying that the testimony of the 34 judges who testified in *Castro* proves any such thing, nor do we suggest that the record demonstrates with clarity that the proposed further testimony from the additional 70 judges necessarily would have proved petitioners' point. In the first instance the ruling would have been for the respondent court. We merely hold that petitioners should have been permitted to try.

[10]"If there has been any discrepancy or any violation of the—or let's say this, if there has been an intentional, arbitrary and systematic exclusion of Mexican-American citizens from the 1969 Grand Jury list, then I will permit you to show that that has been a consistent pattern for the past ten years. . . ."

clear that it simply was not going to receive the proffered evidence if the 1969 statistics did not establish a prima facie case. ■ "Where an entire class of evidence has been declared inadmissible or the trial court has clearly intimated it will receive no evidence of a particular class or upon a particular issue, an offer of proof is not a prerequisite to raising the question on appeal, and an offer, if made, may be broad and general." (*Beneficial etc. Ins. Co.* v. *Kurt Hitke & Co.*, 46 Cal.2d 517, at p. 522 [297 P.2d 428].)

■ Second, petitioners made about as adequate an offer as could reasonably be expected under the circumstances. The court had the *Castro* transcript before it and knew the type of question petitioners wanted to ask. In addition it knew the type of question it had been asked when examined as a witness. Further, counsel for petitioners made an oral offer, comprising five pages of transcript, detailing the questions they desired to ask of the prospective witnesses and the type of answer they expected.[11]

Finally a very plausible argument can be presented that the principle which dispenses with the need to make an offer of proof when the witness is under cross-examination, also covers the situation where a party who is trying to prove that a grand jury has been illegally selected, examines the selectors.

In summary it is noted that the Evidence Code contains no requirement for an offer of proof, as such. Section 354 reads as follows: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that:

"(a) The substance, purpose, and relevance of the excluded evidence

---

[11] In addition there was filed, at the court's request, a specific order of proof concerning the testimony expected from four judges of the superior court who themselves were members of petitioners' class. Further, again in writing, petitioners stated generally that the questions to be asked of the witnesses related to the following topics: "1. The race, ethnic origin, and religion of the Jury Selector, to determine if he is exclusively selecting members of his own class and excluding members of other classes. 2. The race, ethnic origin, wealth, education and relationship of the jury selector's nominees, to determine the class or classes exclusively considered for nomination. 3. The jury selector's consideration of other classes as potential nominees, to determine the breach of affirmative duty to seek out from all segments of the population. 4. The jury selector's reasons for failing to seek out nominees from other classes, to determine his state of mind and intent in such breach of duty. 5. The sources used by the jury selector in seeking out nominees, to determine his performance of duty to familiarize himself with all segments of the community. 6. The standards of qualification used by the Jury selector in his consideration of potential nominees, to determine his performance or breach of duty to consider all qualified potential nominees."

was made known to the court by the questions asked, an offer of proof, *or by any other means;*

"(b) The rulings of the court made compliance with subdivision (a) futile; or

"(c) The evidence was sought by questions asked during the cross-examination or recross-examination." (Italics ours.)

It is evident that the making of an offer of proof is only one of several means by which the evident purposes of section 354 may be satisfied. We believe that the record made by petitioners in the case at bar amply fulfilled the aim of the section.

The peremptory writ of prohibition must be granted because of the respondent court's refusal to permit petitioners to examine the subpoenaed judges as witnesses.

Petitioners also feel aggrieved by the respondent court's refusal to permit one other witness to testify and by the rejection of other evidence, both oral and documentary. Without considering these claims of error in detail, we are satisfied that all of the court's rulings were either correct by any standard, or well within its discretion under section 352 of the Evidence Code or, if neither of those, not prejudicial.[12]

Petitioners attack the entire system of judicial participation in grand jury selection as being violative of the doctrine of separation of powers. Since, in order to dispose of the present proceeding, it is unnecessary to decide this rather basic constitutional question, we decline to do so. (*People v. Gilbert*, 1 Cal.3d 475, 481-485 [82 Cal.Rptr. 724, 462 P.2d 580].)

■ Petitioners also claim that the trial court erroneously refused to disqualify itself after it had testified in the instant proceeding. It seems to us that this argument turns section 703 of the Evidence Code inside out. The section reads as follows:

"(a) Before the judge presiding at the trial of an action may be called to testify in that trial as a witness, he shall, in proceedings held out of the presence and hearing of the jury, inform the parties of the information he has concerning any fact or matter about which he will be called to testify.

"(b) Against the objection of a party, the judge presiding at the trial

---

[12]The witness was the present District Attorney of Los Angeles County who had been a judge of the respondent court until 1964. During the years 1960 to 1964 he made a total of 10 nominations. Five of these were of persons whose surnames are recognized as Spanish. (U.S. Department of Justice, Immigration and Naturalization Service, "Spanish Name Book," M-156, 1963.) We doubt that petitioners would have found his testimony rewarding.

of an action may not testify in that trial as a witness. Upon such objection, the judge shall declare a mistrial and order the action assigned for trial before another judge.

"(c) The calling of the judge presiding at a trial to testify in that trial as a witness shall be deemed a consent to the granting of a motion for mistrial, and an objection to such calling of a judge shall be deemed a motion for mistrial.

"(d) In the absence of objection by a party, the judge presiding at the trial of an action may testify in that trial as a witness."

If petitioners intended to insist on their right to examine every grand jury "selector" on the respondent court, including the judge who conducted the present hearing, they should have lodged an objection under section 703, subdivision (b) and the matter could have been assigned to another judge.[13] Instead they themselves called the judge as a witness. There was no indication that they felt that he was disqualified from hearing the motion to quash the indictment until after his testimony had been completed. Under these circumstances we believe that petitioners waived any right that the court disqualify itself.

Finally petitioners want us to hold on the basis of the *Castro* record and the additional evidence which they did produce in this case that the 1969 grand jury was illegally constituted. Obviously, this we cannot do. Had the basic error not been committed, the 70 judges would have testified. Then, depending on the nature of their testimony, the People would have had an opportunity to rebut whatever prima facie case petitioners had made out. If we held now that on the evidence so far adduced the grand jury had been illegally selected and ordered the indictment quashed, we would be depriving the People of a chance to prove their case.

The alternative writ is discharged. Let a peremptory writ of prohibition issue prohibiting the respondent court from any further proceedings in the case entitled People of the State of California v. Carlos Montez et al., being its number A-244906, without first reopening the hearing on the

[13]We take judicial notice of the fact that at the time of the hearing in this matter there were 14 judges on the respondent court who, because they had taken office after October 1968 — the time for nominating candidates for the 1969 grand jury—could have had nothing to offer by way of testimony.

petitioners' motion to quash the indictment and proceeding in accordance with the views expressed in this opinion or, alternatively, in its discretion, proceeding to hear said motion de novo.

Stephens, J., and Reppy, J., concurred.