[Crim. No. 9292. First Dist., Div. Four. Oct. 18, 1971.]

In re WARREN WELLS on Habeas Corpus.

[Crim. No. 8712. First Dist., Div. Four. Oct. 18, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
WARREN WELLS, Defendant and Appellant.

(Consolidated Appeals.)

644

## COUNSEL

Garry, Dreyfus, McTernan & Brotsky, Charles R. Garry, Benjamin Dreyfus, Donald L. A. Kerson, David E. Pesonen, and Friedman, Sloan & Bresee for Petitioner in Crim. No. 9292 and for Defendant and Appellant in Crim. No. 8712.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Albert W. Harris, Jr., Assistant Attorney General, Clifford K. Thompson, Jr., Edward P. O'Brien, John T. Murphy and Sanford Svetcov, Deputy Attorneys General, for Respondent in Crim. No. 9292 and for Plaintiff and Respondent in Crim. No. 8712.

## OPINION

**CHRISTIAN, J.**—Appellant Warren Wells and seven codefendants were indicted on two counts of attempted murder (Pen. Code, § 187) and two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (b)). Appellant's case was severed for trial. After two previous trials had ended in jury disagreement, appellant was finally found guilty of the assault charges and not guilty of attempted murder. The appeal is from the ensuing judgment of conviction; a petition for habeas corpus, filed by Wells, has been consolidated with the appeal. We find no error in the trial, but

reverse the judgment so that appellant's challenge to the composition of the grand jury can be determined.

Appellant does not contest the sufficiency of the evidence, which shows that on the evening of April 6, 1968, Oakland Police Officers Darnell and Jensen, on patrol in West Oakland, were attacked by a group of armed men. The officers were both wounded, but Darnell was able to return the gunfire. Two groups of men fled from behind parked automobiles as other officers arrived. Appellant was soon found, wounded, in the bushes in front of a nearby building. A .30 calibre M-1 rifle and a bandolier containing three clips of live, .30 calibre, M-1 ammunition were found near appellant. At trial a technician testified that the rifle had fired six of the spent shell casings which were found in the area from whence the officers were attacked.

## Speedy Trial

Eighty-three days elapsed between the conclusion of the second trial and the commencement of the third trial; appellant contends that this violated his constitutional right to a speedy trial. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 13.) In determining whether a defendant has been denied a speedy trial, the courts must consider not only the extent of delay, but the circumstances of the particular case and the reason for the delay. (*United States* v. *Ewell* (1966) 383 U.S. 116, 120 [15 L.Ed.2d 627, 630-631, 86 S.Ct. 773].) In no case cited by appellant has a delay as short as 83 days been held to be a constitutional violation. (See Note, *The Right to a Speedy Criminal Trial* (1957) 57 Colum.L.Rev. 846, 852, fn. 38.) Appellant contends that the delay was due to a deliberate decision by the prosecution to try codefendant Charles Bursey, who had not yet gone to trial, before trying appellant for the third time. It is obvious that both trials could not be held at the same time, as they involved the same prosecutor, defense counsel, witnesses and evidence. The trial date for Bursey had been set more than two weeks before appellant demanded, by means of a habeas corpus petition, that he be tried on the date set for Bursey. It was not unreasonable for the court to deny this request and proceed with the trial schedule which had already been set. (See *People* v. *Lilliock* (1968) 265 Cal.App.2d 419, 436 [71 Cal.Rptr. 434].) Appellant was not denied a speedy trial.

## Demonstrative Evidence

Appellant contends that the trial court erred in admitting into evidence 14 firearms and a large quantity of ammunition discovered in the area of the assault. He contends that this evidence was not relevant to any material issue in his case and that, even if the evidence was relevant, it

should have been excluded under Evidence Code section 352 because its probative value was outweighed by its prejudicial effect.

 Demonstrative evidence that tends to clarify the circumstances of the charged crime is generally admissible despite its prejudicial tendency. (*People* v. *Trujillo* (1948) 32 Cal.2d 105, 115 [194 P.2d 681]; *People* v. *Adamson* (1946) 27 Cal.2d 478, 485 [165 P.2d 3].) The theory of the prosecution was that appellant, and his codefendants, carried out an attack from ambush. Therefore, although the weapons and ammunition found in the area were not shown to have been used specifically by appellant, they were admissible to show the nature and apparent intent of the acts of which appellant was charged. We cannot say that the evidence was so prejudicial that it should not have been admitted despite its relevancy. Prosecution testimony had already revealed that a gun battle involving many persons and weapons had taken place. The jury had been informed that there were 49 bullet holes in the police car and 33 bullet holes in other cars in the area. In light of this evidence, it is doubtful that the minds of the jury were improperly affected by the sight of the actual weapons and ammunition.

### Prejudicial Publicity

 Somewhat inconsistently with the speedy trial point discussed above, appellant sought indefinite continuance of the trial on the ground that publicity concerning the Black Panthers, and identifying the perpetrators of the assault with the Black Panther party, would deny him a fair trial. On review an appellate court is to make an independent evaluation of the evidence to determine whether there is a reasonable likelihood that appellant did not receive a fair trial. (*People* v. *Tidwell* (1970) 3 Cal.3d 62, 69 [89 Cal.Rptr. 44, 473 P.2d 748]; *Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 382-383 [66 Cal.Rptr. 724, 438 P.2d 372].)

 Appellant complains of no adverse publicity directly relating to him. Instead he contends that adverse publicity about the Black Panthers must have damaged him in the eyes of the jury. But the jurors indicated during *voir dire* that they understood that appellant, not the Black Panthers, was on trial and declared that they would not be influenced by mention of the Black Panther party. Indeed, eight of the jurors indicated that they had no opinion whatever about the Black Panthers; none of the remainder showed an adverse opinion of the party. Several jurors, when questioned about the condemnation of the Panthers by public officials, indicated that they were not aware of such statements. Publicity apparently continued during trial, but the record does not show that this publicity was conveyed

to the jury. It is to be presumed that the jurors heeded the admonition, given by the court, to ignore such publicity if they did become aware of it. (See *People* v. *Santo* (1954) 43 Cal.2d 319, 331 [273 P.2d 249].)

The connection between the assertedly adverse publicity and appellant's case was remote, the responses of the jurors on *voir dire* indicated lack of bias, and there is no showing that publicity during trial reached the jurors; therefore there is no showing of a reasonable likelihood that publicity deprived appellant of a fair trial.

### Peremptory Challenges

■ Appellant contends, on appeal and in a separate petition for habeas corpus, that the prosecution exercised peremptory challenges as part of a scheme to exclude all Negroes from the jury. To prove a consistent pattern of racial discrimination by the prosecution, appellant relies on records in two other cases involving his codefendants (People v. Bursey, 1/Crim. 8498, and People v. Lankford and Cotton, Superior Court No. 42287) as well as the record in his own case. Those two cases, and appellant's own case, were tried by the same prosecutor. In the three cases a total of 19 black persons were peremptorily challenged by the prosecution. No blacks served on any of the three juries. Appellant contends that these three cases are sufficient for a prima facie showing of discrimination and that the burden should therefore shift to the prosecution to prove that no discrimination occurred.

In *Swain* v. *Alabama* (1965) 380 U.S. 202 [13 L.Ed.2d 759, 85 S.Ct. 824], the United States Supreme Court declared: "We have decided that it is permissible to insulate from inquiry the removal of Negroes from a particular jury on the assumption that the prosecutor is acting on acceptable considerations related to the case he is trying, the particular defendant involved and the particular crime charged. But when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance. . . . Such proof might support a reasonable inference that Negroes are excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify." (380 U.S. at pp. 223-224 [13 L.Ed.2d at p. 774].) The court

went on to discuss the proof necessary to establish the defendant's claim. "This is not to say that a defendant attacking the prosecutor's use of peremptory challenges over a period of time need elicit an admission from the prosecutor that discrimination accounted for his rejection of Negroes. . . . But the defendant must, to pose the issue, *show the prosecutor's systematic use of peremptory challenges against Negroes over a period of time.*" (380 U.S. at p. 227 [13 L.Ed.2d at p. 776]; italics added.)

Three cases (especially three cases chosen by the appellant) are insufficient to establish that the Alameda County District Attorney's office, or a single prosecutor therein, has a policy of excluding minority group members through peremptory challenges. The federal cases cited by appellant, where the prosecution was required to rebut a prima facie showing of discrimination in jury selection, all involved much larger samples than that offered by appellant. (*Whitus* v. *Georgia* (1967) 385 U.S. 545 [17 L.Ed.2d 599, 87 S.Ct. 643]; *Anderson* v. *Alabama* (1961) 366 U.S. 208 [6 L.Ed.2d 233, 81 S.Ct. 1050] (per curiam reversal; facts at 270 Ala. 575 [120 So.2d 397]); *Labat* v. *Bennett* (5th Cir. 1966) 365 F.2d 698; *Davis* v. *Davis* (5th Cir. 1966) 361 F.2d 770; *Scott* v. *Walker* (5th Cir. 1966) 358 F.2d 561; *United States* ex rel. *Seals* v. *Wiman* (5th Cir. 1962) 304 F.2d 53.)

Moreover, in appellant's case, the prosecutor, although not required to do so (*Swain* v. *Alabama, supra,* 380 U.S. 202, 221-222 [13 L.Ed.2d 759, 773]), explained to the trial court the reasons for his three challenges of black persons. Two black prospective jurors were excused because they had previously been charged with crimes, and the prosecutor feared bias against policemen who would be appearing as witnesses. The third black prospective juror was excused because the prosecutor observed conduct which indicated that she was familiar with, or biased toward, the accused. The trial court, which had the opportunity to observe the excused persons and consider the prosecution's explanations, determined that there was no systematic exclusion of jurors on the basis of race. The record does not compel a contrary conclusion.

█ Appellant also contends, presenting the affidavit of a newspaper reporter, that there was a possible conspiracy among deputies in the district attorney's office to accept more black persons on juries in other criminal cases, thereby reducing the number of black persons available for service in appellant's case. The newspaper reporter declared that he received his information from a member of the district attorney's office, who had heard other prosecutors suggesting the practice. Besides the fact that the assertion was based only on hearsay, there is no showing that the claimed plot was put into effect. The affidavit is insufficient; moreover, there *is no indication* that the affidavit and claim of conspiracy were pre-

sented to the trial court, or that the information was unavailable at the time of trial. Therefore, no basis has been shown for reversal on the ground asserted.

### Grand Jury

Appellant contends that the prosecution's decision to proceed by grand jury indictment rather than by preliminary hearing and information violated his right to equal protection and due process of law. This contention has been raised and rejected in previous cases. (*People* v. *Pearce* (1970) 8 Cal. App.3d 984, 988 [87 Cal.Rptr. 814]; *People* v. *Newton* (1970) 8 Cal. App.3d 359, 388 [87 Cal.Rptr. 394]; *People* v. *Flores* (1969) 276 Cal. App.2d 61, 65-66 [81 Cal.Rptr. 197].)

Appellant also argues that the grand jury indictment was invalid because California statutes governing the selection of grand juries (Pen. Code, §§ 894-903.4) are unconstitutional on their face in that they invite discrimination and are unconstitutionally vague.[1] This contention is without merit. (*Carter* v. *Jury Commission* (1970) 396 U.S. 320, 322-335 [24 L. Ed.2d 549, 553-560, 90 S.Ct. 518]; *Cassell* v. *Texas* (1950) 339 U.S. 282, 284 [94 L.Ed. 839, 845-846, 70 S.Ct. 629]; *Smith* v. *Texas* (1940) 311 U.S. 128, 130 [85 L.Ed. 84, 86, 61 S.Ct. 164]; *People* v. *Newton, supra,* 8 Cal.App.3d 359, 388.)

■ Appellant next contends that the Alameda County Superior Court judges, in selecting the 1968 grand jury, discriminated against the young, the poor, the less educated, and the black person, in violation of the Fourteenth Amendment. ■ Grand juries, as well as petit juries, must be selected in a manner which does not systematically exclude, or substantially underrepresent, the members of an identifiable group in the community. (*Whitus* v. *Georgia, supra,* 385 U.S. 545, 548-552 [17 L.Ed.2d 599, 602-605]; *Hernandez* v. *Texas* (1954) 347 U.S. 475, 476-478 [98 L.Ed. 866, 868-870, 74 S.Ct. 667].) ■ As to three of the classes, the young (defined by appellant as those under 30), the poor (those with annual incomes under $5,000), and the less educated (those with less than a high school education), even if they are assumed to constitute "identifiable groups," appellant has not shown that he had standing to assert discrimination, as the record does not show that he falls within the classifications. (*People* v. *White* (1954) 43 Cal.2d 740, 753 [278 P.2d 9]; *Ganz* v. *Justice Court* (1969) 273 Cal.App.2d 612, 620-621 [78 Cal.Rptr. 348].) Statements in his brief do not constitute evidence. (*People* v. *Gardner* (1969) 71 Cal.2d 843, 849 [79 Cal.Rptr. 743, 457 P.2d 575].)

---

[1] Under these statutes, superior court judges may "make all or any selections from among the body of persons in the county suitable and competent to serve as grand jurors . . . ." (Pen. Code, § 903.4; *People* v. *Teitelbaum* (1958) 163 Cal.App.2d 184 [329 P.2d 157].)

Petitioner does have standing to raise the issue of discrimination against black persons, who are an "identifiable group." Four of the sixty 1968 grand jury nominees (6.7 percent) were black. Black persons constitute 12.4 percent of Alameda County's population. (*People* v. *Newton, supra,* 8 Cal.App.3d 359, 389.) The disparity between 6.7 percent and 12.4 percent is not so substantial as to constitute a prima facie case of purposeful discrimination. (See *Swain* v. *Alabama, supra,* 380 U.S. 202, 205, 209 [13 L.Ed.2d 759, 764, 766] (holding that 10-15 percent versus 26 percent not to be substantial); *People* v. *Newton, supra,* at p. 390 (holding 7.5 percent versus 12.4 percent not to be substantial).) Appellant has failed to prove his claim of discrimination against black persons in selection of the grand jury.

Appellant also contends that the trial court erred, at the hearing on the motion to quash the indictment, in refusing to subpoena all the judges in the county to ascertain their practices in selecting grand jurors. This contention is sound. Statistical evidence is not the only method of showing discrimination in jury selection (*Cassell* v. *Texas* (1950) 339 U.S. 282, 290 [94 L.Ed. 839, 848-849, 70 S.Ct. 629]), and appellant was entitled to examine the selection process itself to ascertain whether constitutional standards were met. (*Montez* v. *Superior Court* (1970) 10 Cal.App.3d 343, 348-350 [88 Cal.Rptr. 736].) It has been held that jury selectors have an affirmative duty to familiarize themselves with, and select qualified persons from, all identifiable groups in the community; they cannot stop with their personal acquaintances. (*Cassell* v. *Texas, supra,* at p. 289 [94 L.Ed at p. 848]; *Brooks* v. *Beto* (5th Cir. 1966) 366 F.2d 1, 12 [4 A.L.R. Fed. 403].) The fact that the makeup of the resulting panel does not statistically establish discrimination does not end the inquiry, for proportional limitation, as well as total exclusion, is impermissible. (*Swain* v. *Alabama, supra,* 380 U.S. 202, 208 [13 L.Ed.2d 759, 766]; *Cassell* v. *Texas, supra,* at pp. 286-287 [94 L.Ed. at pp. 846-847]; *Montez* v. *Superior Court, supra,* at pp. 348-349.) A defendant cannot effectively challenge selection practices without access to the selectors. The court refused to allow issuance of subpoenas, remarking that the testimony of the judges would be merely cumulative of information obtained from questionnaires answered by some members of the grand jury. But the jurors could not conclusively answer questions which appellant was entitled to ask concerning the policies and practices of the selectors.

There can be no doubt, as the Attorney General argues, that the power to examine the judges could be used in such a manner as to impair the administration of justice; but the remedy is not to deny examination. In a county like Alameda, which possesses a jury commissioner, the superior court may require the jury commissioner to prepare a "list of persons

recommended by him for grand jury duty." (Pen. Code, § 903.3.) If a grand jury is drawn from such a list, a challenge to its composition could be handled with little inconvenience; only the jury commissioner would need to be examined to determine the fairness of the selection practices. The judges in Alameda County have chosen to select the grand jurors themselves, which is specifically authorized by Penal Code section 903.4. (Also see *People* v. *Teitelbaum, supra,* 163 Cal.App.2d 184.) But by doing so, the judges constitute themselves collectively as the nominating body and must, if an issue is presented on a motion to quash the indictment, be made available for examination to determine whether constitutional standards were met. (*Montez* v. *Superior Court, supra,* 10 Cal. App.3d 343.) If such proceedings become burdensome, the judges are free to return the function to the jury commissioner.

The court's error in refusing to make the judges available for examination does not call for outright reversal of the judgment of conviction; examination of the judges might have disclosed that in fact the grand jury was constitutionally chosen, and that the judgment is free of defect. It is therefore appropriate to direct that further proceedings be taken to determine whether the challenge to the indictment was valid. (See Pen. Code, § 1260.) Such proceedings will comply with the requirement of Penal Code section 1191 that judgment be pronounced within 21 days after the verdict, the delay until any ruling on the motion to quash the indictment having been sanctioned by appellant's action in prosecuting the present appeal. (Cf. *People* v. *Ford* (1966) 65 Cal.2d 41, 47 [52 Cal.Rptr. 228, 416 P.2d 132]; see Witkin, Cal. Criminal Procedure, (1963) Judgment and Attacks in Trial Court, § 610, p. 602.)

The judgment is reversed with directions to take evidence on the motion to quash the indictment before reconsidering the ruling on the motion. If the motion is found to be good, the court shall dismiss the indictment and release appellant from custody. If the motion be denied, the court shall rearraign appellant for judgment and pronounce judgment on the jury's verdicts.

The petition for writ of habeas corpus is denied.

The purported appeal from the order denying probation is dismissed.

Devine, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied November 17, 1971, and the petitions of petitioner and appellant in Nos. 9292 and 8712 and respondent in No. 8712 for a hearing by the Supreme Court were denied December 16, 1971. Peters, J., was of the opinion that the petition of petitioner and appellant should be granted.