[Crim. No. 11415. First Dist., Div. Four. June 25, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
WARREN WELLS et al., Defendants and Appellants.

**12**

**COUNSEL**

Garry, Dreyfus, McTernan & Brotsky, Garry, Dreyfus, McTernan, Brotsky, Herndon & Pesonen, Benjamin Dreyfus and Ephraim Margolin for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, W. Eric Collins and Sanford Svetcov, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHRISTIAN, J.**—Warren Wells and Charles Bursey, with several co-defendants, were indicted by the Grand Jury of Alameda County in April 1968 on two counts of attempted murder (Pen. Code, § 187) and two counts of assault with a deadly weapon upon a police officer (Pen. Code, § 245, subd. (b)). A jury found Bursey guilty of all four counts. In a separate trial Wells was found guilty of the two assault counts and acquitted of the counts of attempted murder. Appeals from the ensuing judgments resulted in a determination that the trial court had erred in refusing to make the judges available for examination in hearing appellants' motions to quash the indictment. We held that where the judges chose not to require the jury commissioner to prepare a grand jury list (see Pen. Code, § 903.3) and instead constituted themselves collectively as the body compiling the list, they must be made available for examination to test the constitutionality of the selection procedures. Both judgments were reversed with directions to the trial court "to take evidence on the motion to quash the indictment before reconsidering the ruling on the motion." (*In re Wells* (1971) 20 Cal.App.3d 640, 651 [98 Cal.Rptr. 1]).[1]

After taking evidence in a consolidated hearing of the motions of both appellants, the trial court denied the motions to quash the indictment and pronounced judgment committing both appellants to state prison with credit for time theretofore served.

In the former appeal it was determined that the procedures authorized by the California statutes for the selection of grand jurors are not inherently unconstitutional (see *In re Wells, supra*, 20 Cal.App.3d at p. 649). The present appeal turns upon a single issue: whether the order denying the motion to quash the indictment is supported by substantial evidence.

■ Jury selection officials cannot stop with their personal acquaintances; they must acquaint themselves with the qualifications of potential jurors from all identifiable groups within the community. (*Cassell* v. *Texas*

---

[1]The unpublished disposition in the appeal of Charles Bursey is on file in *People* v. *Bursey*, 1/Criminal 8498.

(1950) 339 U.S. 282, 289 [94 L.Ed.2d 839, 848, 70 S.Ct. 629]; *Hill* v. *Texas* (1942) 316 U.S. 400, 404 [86 L.Ed. 1559, 1562, 62 S.Ct. 1159]; *Brooks* v. *Beto* (5th Cir. 1966) 366 F.2d 1, 12 [4 A.L.R. Fed. 403]; *In re Wells, supra,* 20 Cal.App.3d 640, 650.) Each selector must refrain from any course of conduct which has the natural consequence of excluding a group of citizens from jury service. (*Avery* v. *Georgia* (1953) 345 U.S. 559, 561 [97 L.Ed. 1244, 1247, 735 S.Ct. 891].)

The procedure for selecting Alameda County Grand Juries was explained in the testimony of the jury commissioner. Each of the 20 judges draws, each year, three of the county's seven judicial districts. Each judge then nominates one prospective grand juror from each of the three judicial districts he has drawn. The 19-member grand jury is then randomly drawn by lot pursuant to statute (Pen. Code, §§ 900, 902, 904-908).

The court prepared a memorandum of decision to explain its reasons for denying the motion to quash the indictment. The memorandum recited the following "findings":

"1. The Judges of the Superior Court, in making nominations for the 1968 Grand Jury, did not limit their selections to friends and acquaintances. They did familiarize themselves with all identifiable groups in the community including black persons.

"2. The evidence is insufficient to sustain a conclusion that any class or grouping of individuals was discriminated against or excluded from selection for the 1968 Grand Jury, or from any grand jury as to which evidence was presented, because of race or color, or for any reason.

"3. The statistical evidence presented in these proceedings sheds no light on the motivations, subjective judgments and techniques of the judges involved and presents no information as to what actually occurred in the selection process; and does not support a finding that any class or grouping of individuals, including black persons, was arbitrarily or systematically, intentionally or otherwise, excluded from consideration in the grand jury selection process for 1968, or for any years as to which evidence was presented, by any judge or combination of judges."

We have determined that the court's ruling was supported by substantial evidence. The judges testified that by choice, as well as because they were sometimes not well acquainted in the districts from which they were to nominate, they went outside their circle of friends and acquaintances. Appellants complain that Judge Kroninger selected personal friends and acquaintances; yet Judge Kroninger testified that one-third to one-half of the persons he asked each year were black and that 25

percent of his nominees were black. Several of the judges testified that no coordinated plan had been implemented to insure that a cross-section of the county gained representation on the grand jury list; yet virtually all the judges testified that they had personally tried to insure representation of a cross-section of the community, especially in regard to black citizens. Many of the judges testified that they had sought the help of leaders in the black community for that purpose. Almost all of the judges testified that they had acquainted themselves with black citizens in order to insure community representation. Virtually all of the judges testified that they were familiar with the qualifications of black citizens in the community who would be eligible for grand jury service.

In summary, there was substantial evidence that the 1968 Alameda County Grand Jury was constitutionally selected, without racial discrimination, by judge-selectors who did not limit their nominations to personal acquaintances, but sought to familiarize themselves with all identifiable groups, including blacks.

Affirmed.

Rattigan, Acting P. J., and Bray, J.,* concurred.

A petition for a rehearing was denied July 18, 1974, and appellants' petition for a hearing by the Supreme Court was denied August 21, 1974.

---

*Retired Presiding Justice of the Court of Appeal sitting under appointment by the Chairman of the Judicial Council.