[No. G028675. Fourth Dist., Div. Three. May 30, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL JOHN SZYMANSKI, Defendant and Appellant.

**COUNSEL**

Douglas G. Benedon, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pamela A. Ratner Sobeck and Arlene Aquintey Sevidal, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**O'LEARY, J.**—A jury found Paul John Szymanski guilty of two counts of possession of a controlled substance and transportation of a controlled substance. On appeal, he argues the court abused its discretion in denying a challenge for cause as to Juror No. 13, and the court improperly denied his motion to sever count one from counts two, three, and four. We agree with his first contention and, accordingly, the judgment must be reversed. We need not address his second argument because severance will not be an issue if the case is retried: the jury found Szymanski not guilty on count one.

### I

Because the dispositive issue in this case concerns the jury selection process, we need not give a detailed account of the facts underlying the charged crimes. Suffice it to say, count one relates to drugs found by police searching Szymanski's friend's house. Szymanski was found sitting in a cluttered bedroom that also contained a baggie of methamphetamine. He said the drugs were not his. The jury believed him and found him not guilty of simple possession.

Counts two and three related to a different incident occurring several weeks later. Police officers arrested Szymanski after they found methamphetamine wrapped in black tape near the passenger side of his car. Similar black tape, a pager, and an envelope containing $170 were inside the car. Although charged in count two with possessing the drugs for sale, the jury determined he was guilty of the lesser included offense of simple possession. The jury also found him guilty of transporting the controlled substances as charged in count three. The last count relates to a subsequent search several days later. The police found drugs in Szymanski's shirt pocket. The jury found him guilty of simple possession as charged in count four. The court sentenced Szymanski to five years in state prison.

### II

During voir dire, and after all of Szymanski's peremptory challenges had been exercised, both sides challenged Juror No. 13 (hereinafter the Juror) for

cause. The challenges were made on the ground she was unable to perform her duty as a juror because she did not have an adequate command of the English language. The issue arose when the Juror, asked a standard question about her ability to serve, candidly responded: "I think everything is okay with me except my English. Some of the words I cannot catch because I come from China. And there are some English words that I don't understand." The following exchange then took place:

"The Court: Okay. And have you been in the country around nine years, is that right?

"[The Juror]: Yeah.

"The Court: Let's see, . . . you're married[] and you have one child?

"[The Juror]: Yeah.

"The Court: Does your child go to public school?

"[The Juror]: Private school.

"The Court: Do you ever get involved at the school with some of the parents, P.T.A. meetings, that kind of stuff?

"[The Juror]: What is P.T.A.?

"The Court: Parent Teacher Association, where the other parents of the other kids get together and help raise money for the school?

"[The Juror]: Yeah, once in a while when we have that thing, they ask me; and I work.

"The Court: Do you at your job deal with people you have to talk to in English?

"[The Juror]: Yeah, I do. My job is purchasing. I deal with (unintelligible) every day, buying things from China and selling here. As a matter of fact, I get a lot of chance to practice my Chinese.

"The Court: Probably every day.

"[The Juror]: Yeah, every day.

"The Court: If you remain as a juror in the case, as we go on if there ever is a time when somebody either uses a word that you are not familiar with or

just plain talks too fast or mumbles, which happens, also, you need to make sure you let us know you didn't hear something. You didn't understand something. And you let us know, and we will explain that to you, okay?

"[The Juror]: Okay."

Later on, during voir dire by Szymanski's counsel, the Juror again candidly admitted she was having trouble understanding some words:

"[Szymanski's counsel] We are going to be dealing with some legal concepts, circumstantial evidence?

"[The Juror]: I know. That's why I feel somebody talking. I understand. But when you're talking, you say as (unintelligible) just now you talk about (unintelligible) law enforcement—law enforcement. What's that?

"[Szymanski's counsel]: That would be a little difficult for you?

"[The Juror]: There's so many terms he said, P.D. Police (unintelligible).

"[Szymanski's counsel]: Police Department.

"[The Juror]: Yeah, see, there's terms like I don't feel I know that.

"[Szymanski's counsel]: Do you feel like it would be unfair for you to be on this jury to try to make a decision?

"[The Juror]: See, I really want to know what's, you know, if I got a chance to make a decision whether you're wrong or not, I got to understand what you guys talking about, and what's the evidence. If I don't understand, that's not fair for me to make any judgment.

"[Szymanski's counsel]: I really don't want to make this a learning experience.

"[The Juror]: Yeah, I know. I know. That's why I feel like I gotta tell you guys I don't want to pretend that I know everything.

"[Szymanski's counsel]: I understand. I have no further questions."

When rejecting the parties challenges for cause, the court stated, "It is my observation she understands pretty well; and anything she doesn't understand I got her to agree she would ask us to slow down and/or stop." Not once during the trial did the Juror interrupt the proceedings to ask a question or request clarification.

"Penal Code section 1089 provides, in pertinent part: 'If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged and draw the name of an alternate, who shall then take his place in the jury box, and be subject to the same rules and regulations as though he had been selected as one of the original jurors.' (See also Code Civ. Proc., §§ 233, 234.) ▮ 'We review for abuse of discretion the trial court's determination to discharge a juror and order an alternate to serve. [Citation.] If there is any substantial evidence supporting the trial court's ruling, we will uphold it. [Citation.] We also have stated, however, that a juror's inability to perform as a juror " 'must appear in the record as a demonstrable reality.' " [Citation.]' [Citation.]" (*People v. Cleveland* (2001) 25 Cal.4th 466, 474 [106 Cal.Rptr.2d 313, 21 P.3d 1225], fn. omitted.)

▮ "Insufficient command of the English language to allow full understanding of the words employed in instructions and full participation in deliberations clearly would render a juror 'unable to perform his duty' within the meaning of Penal Code section 1089. The question is whether such an inability appears in the record before us ' " ' "as a demonstrable reality." ' " . . .' [Citation.]" (*People v. Elam* (2001) 91 Cal.App.4th 298, 316 [110 Cal.Rptr.2d 185].)

▮ The Attorney General maintains Szymanski failed to show "as a demonstrable reality" the Juror was unable to perform her duty. The Attorney General argues the Juror was able to answer questions appropriately, she had been in the United States for a substantial time, and was employed "where she used her language skills on a daily basis." The Attorney General acknowledges the Juror did not understand some "legal jargon, abbreviations, or acronyms," but many "lay people" have the same difficulties. The Attorney General concludes there is no reason to believe she would be unable to follow legal instructions, communicate with other jurors, or have problems comprehending the evidence and legal concepts discussed during trial.

The Attorney General gives a nice summary of the record, but leaves out several crucial facts. The Juror was able to answer questions, but her responses were in broken English and often her words were unintelligible. She was employed as a purchaser, but bought items from China and, therefore, used her *Chinese* language skills on a daily basis. Indeed, she noted her job gave her "a lot of chance [*sic*] to practice [her] Chinese." Contrary to the Attorney General's contention, the Juror did not say she

spoke English on a daily basis. And while we recognize many Americans do not understand legal jargon, the Juror admitted she did not understand many commonly understood terms such as "law enforcement" and "police department."

The Juror candidly told the court "everything is okay with me except my English." She unequivocally told the court, "Some of the words I cannot catch because I come from China. And there are some English words that I don't understand." She felt it would be unfair for her to serve on a jury, stating that if she did not understand, "that's not fair for me to make any judgment." She sincerely confessed, "I don't want to pretend that I know everything." It is hard to imagine what else she could have said or done to convey that her insufficient understanding of the English language was a reality.

 "This much is certain: we should have jurors who are fully able to understand spoken and written English on our juries, if justice is to be achieved." (*Ganz v. Justice Court* (1969) 273 Cal.App.2d 612, 623 [78 Cal.Rptr. 348]; *People v. Jones* (1972) 25 Cal.App.3d 776, 783 [102 Cal.Rptr. 277] [evaluating merits of reading competence test for prospective jurors].) Unlike the trial court, we take little comfort in the notion this juror would interrupt the proceedings anytime she had difficulty understanding an English word. As aptly stated by Szymanski's counsel, "Against this record that was a hollow promise, and offered [Szymanski] no real protection." We find it telling that in order to understand the questions posed on voir dire the Juror had to ask for help several times, yet not once during the trial did she ask for assistance. And it cannot be ignored that both Szymanski and the prosecution challenged this juror for cause: Both sides concluded she did not possess sufficient knowledge of the English language to perform her duties as a juror.

The Attorney General has dusted off, for us to review, an old, moldy case. In *People v. Davis* (1894) 4 Cal.Unrep. 524, 526, the defendant argued that a challenge for cause with respect to a juror who testified on voir dire that he could understand and read English "pretty well," but could not "write much," and who also admitted that he could not always understand "what anyone says when they speak in English," was erroneously disallowed. The Supreme Court held, "It was for the court to determine as to the qualifications of the juror, and, after seeing him and hearing him talk, it properly concluded, so far as we can see, that he was competent to act." (*Id.* at pp. 526-527.) However, that is a far cry from holding a person who repeatedly protests she cannot understand, does not want to *pretend* to understand, and thinks it would be *unfair* for her to "make any judgment," would nevertheless qualify to serve as a juror pursuant to Penal Code section 1089. Unlike

the *Davis* juror, the Juror in this case had openly called into question her ability to serve as a juror.

We agree with Szymanski that he was denied the right to have a trial before a qualified jury. ■ It is well established, "Denial of an appropriate and timely challenge for cause may result in an unqualified juror being forced on the defendant in violation of constitutional and statutory rights. The rule is, therefore, that if the defendant has exhausted peremptory challenges and cannot eliminate a disqualified juror except for cause, and demonstrates that he or she is dissatisfied with the resulting jury, the denial is reversible irrespective of strong evidence of guilt of the crime. [Citations.]" (5 Witkin & Epstein, Criminal Law (3d ed. 2000) Criminal Trial, § 490, p. 693.) Accordingly, the judgment is reversed and the case remanded.[1]

Sills, P. J., and Moore, J., concurred.

---

[1]We need not address Szymanski's argument that trial on count one should have been severed from the other counts. The jury found him not guilty of count one and the double jeopardy clause forbids retrial after acquittal of an offense. (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, § 15.)