Filed 6/20/13  P. v. Knox CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>ARTHUR FRANKLIN KNOX,<br><br>　　　　Defendant and Appellant. | B237511<br><br>(Los Angeles County<br>Super. Ct. No. TA116606) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, John J. Lonergan, Jr., Judge.  Affirmed.

　　　　Johanna R. Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury found defendant and appellant Arthur Franklin Knox guilty of possession of cocaine base for sale. His sole challenge to his conviction concerns the trial court's refusal to dismiss a juror, who he claims had an insufficient command of English. We find that the court did not abuse its discretion by refusing to dismiss the juror, and we therefore affirm the judgment.

# FACTUAL AND PROCEDURAL BACKGROUND

## I. Factual background.

On February 3, 2011, a group of men, including defendant, were detained. Seven individually wrapped off-white rock-like substances resembling cocaine were in defendant's pocket. In another pocket were 17 individually wrapped baggies of the same substance. Analysis confirmed that the substance was cocaine. The People's narcotics expert testified that the cocaine was possessed for sale based on its packaging and quantity, the location in which defendant was arrested, and that he had no smoking paraphernalia.

## II. Procedural background.

On September 9, 2011, a jury found defendant guilty of count 1, possession for sale of cocaine base (Health & Saf. Code, § 11351.5).

On November 16, 2011, after the court found that defendant had eight prior convictions within the meaning of the Three Strikes law,[1] the court sentenced defendant to the high term of five years, doubled to 10 years. The court sentenced him to a consecutive four years under Penal Code section 667.5, subdivision (b), and to a consecutive three years under Health and Safety Code section 11370.2, subdivision (a). His total sentence therefore was 17 years in prison.

---

[1] The trial court struck seven of the strikes.

## DISCUSSION

**I.    The trial court did not abuse its discretion by failing to dismiss Juror No. 2.**

Defendant contends  that the trial court's refusal to dismiss Juror No. 2 was an abuse of discretion that violated his constitutional right to a fair trial.  Defendant additionally contends that the court failed to conduct an adequate inquiry into the juror's ability to serve on the jury.  We do not agree with either contention.

A.    *Additional facts regarding the voir dire of Prospective Juror No. 9032/Juror No. 2.*

The trial court voir dired Prospective Juror No. 9032, who became Juror No. 2:

"Prospective Juror [No.] 9032:  My number is 9032.  My last name  is Prospective Juror [No.] 9032.  I'm married.  Resident of Compton, California.  I'm married.  Three children.

"The court:  What does your spouse do?  What is their occupation?

"Prospective Juror [No.] 9032:  Oh, housekeeper.

"The court:  You're a housekeeper?

"Prospective Juror [No.] 9032:  Yes.

"The court:  What about your spouse?

"Prospective Juror [No.] 9032:  Oh, my husband?

"The court:  Yes.

"Prospective Juror [No.] 9032:  He is in maintenance.

"The court:  Maintenance.  Okay.  Are your kids over 18, any of your children?

"Prospective Juror [No.] 9032:  Yeah.  24.

"The court:  One is 24?

"Prospective Juror [No.] 9032:  Three.

"The court:  Three?

"Prospective Juror [No.] 9032:  Three.

"The court:  All 24?

"Prospective Juror [No.] 9032:  No.

"The court:  How old are they?

3

"Prospective Juror [No.] 9032:  23, 24.  Twins 24 and one boy 26.

"The court:  Okay.  The boy is 24.  And the boy is 26?  All boys?

"Prospective Juror [No.] 9032:  Yes.

"The court:  Twenty-four, 26 and what about the third one?

"Prospective Juror [No.] 9032:  Twins.

"The court:  Twenty?

"Prospective Juror [No.] 9032:  Twins.

"The court:  Twins.  I'm sorry.  I'm hard of hearing as you can tell.  [¶] . . . That's probably why my kids think I yell.  [¶]  So you have two children, two twin boys?

"Prospective Juror [No.] 9032:  A set of twins and another son.

"The court:  How old is the other son?  There's two of what?  Twenty-four?

"Prospective Juror [No.] 9032:  And my daughter.

"The court:  Okay.  What do your sons do?  What is their situation now?  Are they working?

"Prospective Juror [No.] 9032:  Yes, work.

"The court:  Doing what?

"Prospective Juror [No.] 9032:  In the bank.

"The court:  In the bank?

"Prospective Juror [No.] 9032:  Yeah.  [¶] . . . [¶]

"The court:  They both work in the bank?

"Prospective Juror [No.] 9032:  Yeah.

"The court:  Okay.  Any previous jury experience?

"Prospective Juror [No.] 9032:  Who, me?

"The court:  Yeah.

"Prospective Juror [No.] 9032:  No.

"The court:  Never got this far?

"Prospective Juror [No.] 9032:  No."

Defendant passed for cause, and Prospective Juror No. 9032 became Juror No. 2.

4

After the jury was selected, Juror No. 1 addressed the court on Juror No. 2's behalf. Juror No. 2 said she was having a difficult time understanding the court because she was not that fluent in English. The court said: "And Juror No. 2 we addressed her yesterday in the voir dire process, and while she does have some difficulty and it is not her first language, the court did question her in some detail. Both sides had an opportunity to use a peremptory challenge. The court did not think it rose to the occasion of good cause. Therefore, unless there is something either side wants to offer, we will just continue on. As there's several jurors who[se] English is not their first language, part of it may be she's surprised she got this far and she is now on the jury so she is going to start to be more vocal about her language skills. But unless there is a stipulation by both sides, the court is not going to excuse her."

Defendant asked that the juror be excused "because that would be a problem." When the court pointed out that defendant could have used a peremptory challenge, defendant answered he was not aware the juror was having problems. The court said: "Well, the court doesn't think—when I questioned her yesterday, she answered my questions. She obviously has an accent, a heavy accent but it didn't rise to the occasion of good cause because both sides passed for good cause. I am not excusing her. I'm only excusing her if both sides agree to excuse her and it sounds like right now you're agreeing to excuse her but the People are not . . . ."

Thereafter, Juror No. 2 was late returning from lunch. When the trial court asked the other jurors if they had seen her, Juror No. 1 said, "She was having a problem with the language." When the juror arrived 10 minutes late, this exchange occurred:

"The court: . . . [¶] Ma'am, I told all the jurors to be ready to go at 1:45. Did you go home at lunch?

"Juror No. 2: Yes.

"The court: Okay. Also, can you keep your cell phone off when you're in court?

"Juror No. 2: No.

"The court: No. You need to turn it off.

"Juror No. 2: Okay.

5

"The court: Okay. We have now delayed this trial for you being late for ten minutes. You need to be here when I tell you to be here from now on. Okay?

"Juror No. 2: And the problem is the elevator.

"The court: Right. But you have to give yourself enough time. If you decide to go home for lunch and come back, you need to give yourself enough time because the elevators are always slow and only half of them work. Okay. Do you understand?

"Juror No. 2: Yeah."

B.     *Juror No. 2's disqualification does not appear as a demonstrable reality on the record.*

"An accused has a constitutional right to a trial by an impartial jury. [Citations.] An impartial jury is one in which no member has been improperly influenced [citations] and every member is ' "capable and willing to decide the case solely on the evidence before it" ' [Citations]." (*In re Hamilton* (1999) 20 Cal.4th 273, 293-294; see also *People v. Cleveland* (2001) 25 Cal.4th 466, 476; Pen. Code, § 1120.) "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty . . . the court may order the juror to be discharged . . . ." (Pen. Code, § 1089; see also *People v. Farnam* (2002) 28 Cal.4th 107, 140-141.)

The standard of review applicable to removing a sitting juror requires the juror's disqualification to appear on the record as a " ' "demonstrable reality." ' " (*People v. Farnam, supra,* 28 Cal.4th at p. 141; *People v. Barnwell* (2007) 41 Cal.4th 1038, 1052; *People v. Fuiava* (2012) 53 Cal.4th 622, 711.) "This standard 'indicates that a stronger evidentiary showing than mere substantial evidence is required to support a trial court's decision to discharge a sitting juror.' [Citation.]" (*Barnwell*, at p. 1052.) The demonstrable reality test is "more comprehensive and less deferential" than the substantial evidence standard. (*Ibid.*) "It requires a showing that the court as trier of fact *did* rely on evidence that, in light of the entire record, supports its conclusion that bias was established. . . . [A] reviewing court does not *reweigh* the evidence under either test. Under the demonstrable reality standard, however, the reviewing court must be confident

6

that the trial court's conclusion is manifestly supported by evidence on which the court actually relied." (*Id.* at pp. 1052-1053; see also *Fuiava,* at p. 712.) The reviewing court must therefore consider the evidence and the record of reasons the trial court provided. (*Barnwell*, at p. 1053.)

Insufficient command of English to allow a full understanding of the instructions and participation in deliberations can constitute good cause to dismiss a juror. (*People v. Elam* (2001) 91 Cal.App.4th 298, 316; *People v. Szymanski* (2003) 109 Cal.App.4th 1126, 1131; *People v. Lomax* (2010) 49 Cal.4th 530, 566.) The inability to comprehend the proceedings, however, must appear as a demonstrable reality in the record. (*Elam*, at p. 316.) Some language difficulty is insufficient. (*Ibid.*)

In *Szymanski*, the juror told the court, during voir dire, that " 'everything is okay with me except my English.' " (*People v. Szymanski*, *supra*, 109 Cal.App.4th at p. 1129.) The juror was able to answer questions, but her answers were in broken English and "often her words were unintelligible." (*Id.* at p. 1131.) She did not speak English on a daily basis, and she did not understand common terms such as " 'law enforcement' " and " 'police department.' " (*Id.* at pp. 1131-1132.) She could not " 'catch' " " '[s]ome of the words' " because she was from China, and she did not think it was " 'fair for me to make any judgment' " if she did not understand " 'what you guys talking about, and what's the evidence.' " (*Id.* at pp. 1130, 1132.) Based on this record, *Szymanski* found it "hard to imagine what else [the juror] could have said or done to convey that her insufficient understanding of the English language was a reality." (*Id.* at p. 1132.) The court therefore reversed the judgment.

We do not think that *Szymanski* compels a reversal in this case. First, unlike the juror in *Szymanski*, Juror No. 2 never said during voir dire that her language skills impeded her ability to comprehend the proceedings. She claimed her English was insufficient only *after* she became a member of the jury. The trial court suggested that the reason she raised the issue at that point in time was "surprise[] she got this far."

Second, the trial court did note that the juror had a heavy accent and had some difficulty with the language. Nonetheless, the court found that the juror was able to

7

answer the questions, a finding that the record supports. Defendant, however, parses the exchange between the court and the juror in an attempt to show that the juror lacked a sufficient knowledge of English to be on the jury. He points out that the juror, for example, initially said her husband was a housekeeper when the juror meant she was a housekeeper. There was also some confusion about how many children the juror had and their age.

But it is hard to determine whether the confusion resulted from the juror's inability to understand the questions or from the *court's* inability to understand the juror due to her accent or from the trial judge being, in his words, "hard of hearing." When, for example, the juror said she had "twins," the court thought she said "twenty." The court also sometimes asked multiple questions at once, and it is therefore unclear to which question the juror was responding. The court, for example, asked, "The boy is 24. And the boy is 26? All boys?" The juror answered, "Yes," which could be a correct answer, depending on what question she was answering. And when the court asked the juror to keep her cell phone off in court, the juror said, "No." Although defendant suggests this demonstrates the juror's inability to understand instructions, that is not necessarily the only conclusion the record supports. An equally fair reading is the juror did not want to turn off her phone and only agreed to after the court ordered, "You need to turn it off."

Finally, neither defendant nor the prosecutor discerned a problem with the juror's ability to understand English. Neither challenged her for cause.

Based on this record, we do not find the juror's incompetence based on her lack of language skills to be a demonstrable reality. The record is open to interpretation, and we will not second guess a trial court's credibility judgment where it depends, in part, on observing the witness. (*People v. Barnwell, supra,* 41 Cal.4th at p. 1053; *People v. Avila* (2006) 38 Cal.4th 491, 529 [prospective juror's tone of voice, apparent level of confidence, and demeanor divulge valuable information that does not appear on the record]; *People v. Zapien* (1993) 4 Cal.4th 929, 994-995.) Where, as here, firsthand observation might be key to a credibility determination and to understanding the witness, we afford deference to the trial court.

C.  *The trial court did not abuse its discretion by failing to inquire further into Juror No. 2's language skills.*

When Juror No. 2 asked another juror to tell the court she was having a hard time understanding, the trial court should have, defendant contends, conducted a further inquiry into Juror No. 2's competency to serve as a juror.  Again, we disagree.

Once a trial court is put on notice that good cause to discharge a juror may exist, the court has a duty to make whatever inquiry is reasonably necessary to determine whether the juror should be discharged.  (*People v. Cowan* (2010) 50 Cal.4th 401, 505-506; *People v. Martinez* (2010) 47 Cal.4th 911, 941-942.)  " 'The decision whether to investigate the possibility of juror bias, incompetence, or misconduct—like the ultimate decision to retain or discharge a juror—rests within the sound discretion of the trial court.  [Citation.]  The court does not abuse its discretion simply because it fails to investigate any and all new information obtained about a juror during trial.' " (*People v. Virgil* (2011) 51 Cal.4th 1210, 1284.)

The trial court did not abuse its discretion by failing to conduct a further inquiry by, for example, further examining Juror No. 2.  As we noted above, the trial court thought that the point at which Juror No. 2 raised her alleged inability to understand the proceedings was suspicious.  The court suggested that the juror's problem was related to her "surprise" at being on the jury as opposed to an inability to comprehend the proceedings.  The record bears that out.  The juror raised the issue soon after she became a member of the jury—before opening statements and preinstructions had even been given.  The court had just concluded voir dire, and it and the parties impliedly had found the juror's English abilities to be adequate.

Given the voir dire and based on when this issue was raised, we cannot agree that the trial court abused its discretion by failing to conduct a further inquiry into Juror No. 2's ability to understand the proceedings.

9

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ALDRICH, J.


We concur:


KLEIN, P. J.


CROSKEY, J.

10