******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PRESCOTT, J., concurring in the result. Although I share the majority's recognition of the value and importance of promoting jury service by all qualified citizens regardless of their race, gender, color, creed or national origin, I respectfully disagree with the majority's conclusion that the trial court abused its wide discretion by excusing E.F. from serving on the jury on the ground that he could not speak English with the proficiency necessary to competently serve as a juror. Accordingly, I would affirm the judgment of the trial court and find it unnecessary to reach the issue of whether the defendant, Jeffrey Gould, was prejudiced by the court's disqualification of E.F.

My disagreement with the majority primarily stems from two basic principles, both of which I believe are contravened by the analysis employed by the majority. First, the majority virtually ignores or, at most, pays lip service to, the long established, highly deferential standard of review regarding a trial court's determination regarding a juror's competence to serve. Second, a trial court's determination that a prospective juror is unable to speak and understand English well enough to satisfy the requirements of General Statutes § 51-217 (a) (3) constitutes a finding of fact that rests on the court's personal observations of the juror's conduct and speech during his or her voir dire examination, a finding we cannot disturb unless it is clearly erroneous. Without the opportunity personally to see and listen to the prospective juror, the majority itself draws factual inferences and assumptions that are not justified by the cold record or any findings of fact made by the trial court. Instead, it has substituted its judgment that the juror speaks English well enough to communicate effectively with other jurors during the deliberation process for the judgment of the trial court, which was in the most advantageous seat to make this determination.

In light of my disagreement with the majority regarding the evidentiary record, I find it necessary, at the outset, to set forth the following procedural history and facts. The court assembled a venire panel for jury selection. E.F., a Hispanic male and member of the panel, underwent voir dire examination by counsel for both the state and the defendant. During the prosecutor's examination, the following colloquy occurred between the court and E.F.:

"The Court: If I can just interrupt for a moment? Mr. [F.], English is not your first language, is it?

"[E.F.]: No.

"The Court: Do you have any difficulty understanding English?

"[E.F.]: No.

"The Court: No?

"[E.F.]: No, I understand very well.

"The Court: Okay, and you understood everything I said initially when I was talking to the audience out there when you were in the gallery; did you understand—

"[E.F.]: Most of it, yeah, most of it.

"The Court: It's the most of it part that I'm a little worried about, which is why I asked, and I apologize. It's important that you understand everything because I never know—we never know beforehand what's going to be the most important part of the trial. I mean, it's all important, so it's important that you understand everything that's said. Do you feel like you'll be able to understand everything that's said in the courtroom?

"[E.F.]: I think so.

"The Court: Okay, you don't anticipate any problems understanding what people are saying?

"[E.F.]: No, no, in fact I understand what's your point. I got a big accent.

"The Court: Okay.

"[E.F.]: That when I talk, I know sometimes they tell me—

"The Court: No, no, I understand—I just want to—whenever anybody talks to me in an accent, and it's not just Spanish, I often inquire whether they can understand English well enough to be a juror. So, you're comfortable doing that and that's fine.

"[E.F.]: Yes, yes."

The court then permitted the state to resume its questioning.

Following the parties' respective examinations, the state challenged E.F. for cause, arguing that he could not speak and understand English well enough to serve as a juror. Specifically, the state argued that a number of E.F.'s answers were not responsive to the questions posed to him. The state also asserted that E.F. had omitted pertinent details from the section of his juror questionnaire seeking disclosure of any criminal history, despite having fully disclosed those details during the state's voir dire examination.[1] This apparent inconsistency, the state suggested, was possibly attributable to the questionnaire not being written in Spanish.[2]

The defendant objected to the state's challenge for cause, arguing that E.F. had answered every question posed to him, as well as affirmed that he understood everything occurring in the courtroom. The court, however, disagreed. It stated: "I had an *extremely* hard time understanding his answers. . . . I have real concerns about in a jury room whether he's going to be able to

fully participate with the other members of the jury in their deliberations for a verdict because he's *extremely* difficult to understand. There were times—*numerous times* where I did not understand what he was saying, and I think it's related to English not being his first language. I mean, I think he's—I've no reason to believe intellectually he's not capable, but I think the language barrier is a *substantial* one. . . . I think he has a *significant* language barrier that will prevent him from fully participating as a juror in this case." (Emphasis added.) When defense counsel responded that he found E.F. to be unintelligible only when he "mumbled," the court remarked that *part of its point* was that E.F. mumbled often. Accordingly, the court granted the state's challenge for cause.

On appeal, the defendant claims that the court utilized an excessively stringent standard in determining that E.F. did not speak English well enough to serve on the jury.[3] He asserts that E.F. was comprehensible both to defense counsel and the court monitor, the latter of whom was able to prepare an accurate transcript of E.F.'s voir dire examination. The defendant additionally argues that the trial court could have managed any language barrier impairing E.F.'s service as a juror by providing him with an interpreter, asking him to "speak up," or advising other jurors to "listen carefully to each other . . . ."

The state argues that the court properly granted the prosecutor's challenge for cause because E.F. demonstrated, through various confusing and contradictory answers, that he could not speak and understand English with the proficiency required to serve as a juror. It further contends that the court was not required to provide any of the accommodations claimed by the defendant. Finally, the state argues that even if E.F. was improperly excused from the jury panel, the court's error was harmless because the defendant has failed to demonstrate that he suffered any actual prejudice. I agree with the state that the court's factual findings regarding E.F.'s ability to speak and understand English were not clearly erroneous and that the court did not abuse its wide discretion by granting the prosecutor's challenge for cause. I additionally conclude that the court was not required to provide the accommodations to E.F. claimed by the defendant.

I begin by setting forth the highly deferential standard of review, which the majority mentions only briefly in its opinion. "The trial court is vested with wide discretion in determining the competency of jurors to serve." (Internal quotation marks omitted.) *State* v. *Popeleski*, 291 Conn. 769, 772–73, 970 A.2d 108 (2009). "[A] ruling of the trial judge in the course of a voir dire examination is held to be reversible error only [if] the judge has *clearly* abused his discretion or harmful prejudice appears to have resulted." (Emphasis added; internal

quotation marks omitted.) *State* v. *Ziel*, 197 Conn. 60, 65, 495 A.2d 1050 (1985). "A trial court may dismiss a juror who is unable to perform his or her duties upon a finding of cause." (Internal quotation marks omitted.) *State* v. *Diaz*, 94 Conn. App. 582, 588, 893 A.2d 495, cert. denied, 280 Conn. 901, 907 A.2d 91 (2006).

"The [appellate] court's function is not to determine if the trial court could have reached a conclusion other than the one reached but whether the court could reasonably have reached the conclusion it did. An appellate court should guard against substituting its own interpretation of the evidence on the cold record for that of the trial court on the live record. A finding cannot be rejected just because the reviewing judges personally disagree with the conclusion or would have found differently had they been sitting as the factfinder. . . . In deciding whether the trial court could reasonably conclude as it did, we must follow the unquestioned rule that great weight is due the action of the trial court and every reasonable presumption should be allowed in favor of the correctness of its action. . . . *The wide latitude we accord to trial court decisions is especially applicable in cases . . . where the meaning of spoken words cannot easily be gleaned from transcript pages. We were not present at the hearings and therefore cannot appreciate the true flavor of those proceedings.* We will defer to the trial court's broad discretion in such matters." (Citations omitted; emphasis added; internal quotation marks omitted.) *Hill* v. *Hill*, 35 Conn. App. 160, 166–67, 644 A.2d 951, cert. denied, 231 Conn. 914, 648 A.2d 153, cert. denied, 513 U.S. 1059, 115 S. Ct. 669, 130 L. Ed. 2d 603 (1994).

"In Connecticut, the disqualification of a juror may be based upon the General Statutes or upon the rules of the common law." (Internal quotation marks omitted.) *Morgan* v. *St. Francis Hospital & Medical Center*, 216 Conn. 621, 623, 583 A.2d 630 (1990). Section 51-217 (a) (3) provides that "[a] person shall be disqualified to serve as a juror if such person . . . is not able to speak and understand the English language . . . ."

Neither our Supreme Court nor this court has yet had occasion to address the precise level of English proficiency that a prospective juror must demonstrate to satisfy the requirements of § 51-217 (a) (3). I agree with our sister states, however, that all jurors must have mastered the English language to the degree necessary to perform the essential duties of their position. See *State* v. *Ji*, 251 Kan. 3, 9, 832 P.2d 1176 (1992) ("[j]urors must have a reasonable knowledge of the language in which the proceedings are conducted to enable them to perform their duties"). This does not mean, of course, that jurors must understand every word used during trial, or speak with perfect diction and grammar. See *Myers* v. *State*, 77 Tex. Crim. 239, 246, 177 S.W. 1167 (1915) ("if we were to hold as disqual-

ified all citizens who do not understand the meaning of all words in the English language, the list of [persons] qualified to serve on the juries in this State would be quite limited"); see also *Perkins* v. *Komarnyckyj*, 172 Ariz. 115, 120, 834 P.2d 1260 (1992) ("[j]urors are often unfamiliar with correct legal terminology and may even be guilty of improper grammar or usage"). But their ability to speak and understand English must rise to a level that allows them to, "[a]t a minimum . . . understand all of the evidence presented, evaluate that evidence in a rational manner, communicate effectively with the other jurors during deliberations, and comprehend the applicable legal principles, as instructed by the court." *People* v. *Guzman*, 76 N.Y.2d 1, 5, 555 N.E.2d 259, 556 N.Y.S.2d 7 (1990); see *United States* v. *Pineda*, 743 F.3d 213, 217 (7th Cir. 2014) ("English language proficiency is essential for a juror to comprehend the issues presented at trial, assess the evidence, and come to an independent judgment"). "Insufficient command of the English language to allow full understanding of the words employed in instructions and full participation in deliberations clearly would render a juror unable to perform his duty . . . ." (Internal quotation marks omitted.) *People* v. *Szymanski*, 109 Cal. App. 4th 1126, 1131, 135 Cal. Rptr. 2d 691 (2003).

Significantly, a trial court's determination that a prospective juror is unable to speak and understand English well enough to satisfy the requirements of § 51-217 (a) (3) constitutes a finding of fact that rests on the court's personal observations of the juror's conduct and speech during his or her voir dire examination. We will not disturb that finding unless it is clearly erroneous. See *State* v. *Krijger*, 313 Conn. 434, 446, 97 A.3d 946 (2014) ("[o]rdinarily, a jury or trial court's findings of fact are not to be overturned on appeal unless they are clearly erroneous" [internal quotation marks omitted]). "A finding of fact is clearly erroneous [if] there is no evidence in the record to support it . . . or [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id.

Accordingly, to prevail in his claim on appeal, the defendant must either establish that there was *no* evidence in the record to support the court's finding that E.F. was unable to speak English with the skill necessary to satisfy the requirements of § 51-217, or leave us with the *definite and firm* conviction that a mistake has been made. Having reviewed the transcripts of E.F.'s voir dire examination, I agree with the state that, contrary to the defendant's claim and the majority's conclusion, there was evidence in the record to support the court's finding. Furthermore, I cannot conclude with a definite and firm conviction that a mistake has been made.

The court's determination that E.F. lacked sufficient English language skills to meet the requirements of § 51-217 (a) (3) is first supported by its difficulty comprehending him during voir dire. The court expressed this to the parties *no less than three times* following their examinations, stating specifically that it had an "extremely hard time understanding [E.F.'s] answers," that E.F. was "extremely difficult to understand," and that there were "numerous times . . . where [the court] did not understand what [E.F.] was saying . . . ." Defense counsel, too, conceded that E.F.'s "mumbling" made him difficult to comprehend at times, prompting the court to note that he mumbled "often," which was "part of [the court's] point."

Both our Supreme Court and this court have consistently recognized that "a trial court is in the best position to observe the demeanor of the parties, witnesses, jurors and others who appear before it." *Hurley* v. *Heart Physicians, P.C.*, 298 Conn. 371, 396, 3 A.3d 892 (2010); see *State* v. *Anderson*, 255 Conn. 425, 437, 773 A.2d 287 (2001) ("[t]he trial court . . . was in the best position to assess the credibility of the jurors"); *State* v. *Newsome*, 238 Conn. 588, 631, 682 A.2d 972 (1996) ("the trial court . . . is in the best position to assess the testimony of those on the jury panel" [internal quotation marks omitted]); *State* v. *Villanueva*, 44 Conn. App. 457, 463, 689 A.2d 1141 ("[t]he trial court was in the best position to observe the demeanor of the jurors"), cert. denied, 240 Conn. 930, 693 A.2d 302 (1997). Accordingly, I defer to the court's direct observations of E.F.'s speech during voir dire and conclude that those observations provide strong factual support for its finding that E.F. could not speak English with the proficiency necessary to fully participate as a juror throughout the defendant's case. At the very least, I cannot conclude, as the majority appears to implicitly decide, that there is "no evidence" to support the court's factual conclusion regarding E.F.'s English proficiency.

In addition to the court's personal observations of E.F., I agree with the state that E.F.'s responses to various questions during voir dire, although not specifically referred to by the trial court as a basis for its ruling granting the state's challenge for cause, provide further support for its finding. E.F.'s answers were, at times, inconsistent and suggested that he had difficulty either understanding the questions posed to him or formulating appropriate responses to them. For instance, when he was asked by the state if the *prosecutor* in his previous criminal case had treated him fairly, E.F. responded, "[t]he one that was my lawyer, yes," thus suggesting that he either did not understand the state's question or could not make the critical distinction between his own lawyer and the prosecutor. When defense counsel asked E.F. if he could give the state a fair trial, E.F. responded by saying, "[n]o," but then

explained his answer as if he had actually answered affirmatively. Finally, when asked if he would hold his personal feelings toward his previous attorney against defense counsel, E.F. had difficulty providing a clear yes or no response, instead stating: "Yeah, so as I do— I cannot be fair with you." I conclude that these exchanges, although comprising only a small portion of E.F.'s total voir dire examination, were evidence to support the trial court's finding that E.F. could not speak English with the skill needed to carry out his duties as a juror.

Last, I note that E.F. himself tacitly conceded that he had difficulty comprehending all of the court's instructions. As previously discussed, the court specifically asked E.F. during the prosecutor's examination if he understood everything said during the court's initial remarks. E.F.'s answer, "[m]ost of it, yeah, most of it," was, as the court recognized, a valid cause for concern. Although focusing on E.F.'s inability to speak English well enough to serve as a juror, the court also expressed significant concern about E.F.'s ability to understand English. Thus, even though it did not explicitly base its decision to excuse him on that ground, it is apparent from my review of the record that this concern factored into the court's decision to exercise its wide discretion in excusing the prospective juror for cause. Both the defendant and the state are entitled to a jury fully capable of comprehending the court's legal instructions. E.F.'s seemingly equivocal response to the court's inquiry called into question his ability to understand those instructions and, consequently, provided an additional basis for the court to conclude that a substantial language barrier impaired his ability to communicate with other jurors and, consequently, fully participate in jury deliberations.

The majority opinion conclusion that the court's finding regarding E.F.'s English proficiency "lacks support in the record" is in part based on its view that both defense counsel and the court monitor, the latter of whom created a lengthy transcript of the proceedings, were able to hear and understand E.F. There are several fundamental flaws with this reasoning. First, the majority fails to explain why the opinion of the defendant's counsel regarding E.F.'s English speaking ability is entitled to more evidentiary weight over the court's specific factual finding (as well as the prosecutor's contrary opinion) that he was "extremely difficult to understand" "numerous times . . . ." Moreover, counsel for the defendant conceded that E.F. was at times difficult to understand.

Second, the court monitor did not testify or otherwise make any statements during the voir dire proceedings with regard to E.F.'s comprehensibility, and the transcript of the proceedings itself, as the state notes, gives no indication of the court monitor's difficulty or lack

of difficulty in preparing it. Although the transcript does not contain ellipses for inaudible or incomprehensible utterances by E.F., we have no way of knowing how many times the court monitor had to replay portions of the recording to ascertain what E.F. had said or ultimately how successful he or she was in transcribing accurately all of E.F.'s statements. The transcript also does not tell us, as the majority suggests it does, how promptly E.F. responded to questions.

Moreover, even if the transcript, upon first impression, failed to highlight any obvious impairments in E.F.'s speech or English comprehension, that fact would not, by itself, operate to negate the trial court's express findings to the contrary. We are mindful that "firsthand observations ordinarily are a more reliable way to make the factual determinations required of the trial judge during criminal voir dire . . . . A transcript or tape cassette will not fully capture all of the nuances, such as facial expressions or bodily movements, that might appropriately be relevant in making those determinations." *State* v. *Patterson*, 230 Conn. 385, 399, 645 A.2d 535 (1994). Thus, I disagree with the defendant that, taken together or alone, defense counsel's opinion that he found E.F. to be comprehensible or the court monitor's transcript of the proceedings is a sufficient basis from which to conclude that the court's finding is clearly erroneous.

The majority also concludes, as the defendant has argued, that E.F. should not have been excused because he could have simply been asked to "speak up," or clarify his answers, "as routinely happens in daily discourse between people of different social, cultural and linguistic backgrounds in our heterogeneous society." I do not agree. E.F.'s difficulties with English consisted of more than a simple failure to speak loudly or clearly enough to be heard. As previously discussed, the answers he provided indicated that he did not fully comprehend the questions posed to him, or, alternatively, could not articulate sufficiently clear responses to them. Although it follows that instructing E.F. to speak more loudly or clearly *may* have made him easier to *hear*, it does not follow that it would have improved his ability to communicate sufficiently to be a meaningful participant in jury deliberations. Given the court's conclusion, based on personal observation, that E.F. was "extremely difficult to understand" "numerous times," it was certainly reasonable to conclude that during jury deliberations, when the court is not present, the communication issues could not be rectified by other jurors simply asking him to speak up or clarify himself. Indeed, it is equally plausible that other jurors might become frustrated with the communication issues with E.F., thereby resulting in a less than robust deliberative process in which all jurors take into account the expressed views of the others.

I also find the defendant's assertion that the court "considered no accommodations" such as an interpreter for E.F. or an instruction to other jurors to "listen carefully to each other" to be without support in the record. Although the court did not make any statements during the voir dire proceeding indicating what steps, if any, it considered taking to mitigate its concerns about E.F.'s English skills, I cannot infer from its silence that it did not give thoughtful consideration to the matter. The defendant's silence, on the other hand, I find significant. I question how the defendant can fairly fault the court for not providing accommodations to E.F. that not even the defendant considered of sufficient benefit or importance to request. In any event, I conclude, for reasons I now discuss, that the court was not required to provide the defendant's proposed accommodations.

The defendant cites no authority for the proposition that a trial court must provide a non-English speaking juror with an interpreter. Section 51-217 imposes no such obligation, and, indeed, the statutory prescription that jurors speak and understand English would be rendered superfluous if every prospective juror who failed to satisfy the statute was provided with an interpreter.

Moreover, requiring trial courts to provide every non-English speaking juror with an interpreter would impose a substantial financial burden on the state and disrupt jury deliberations. In fact, our Supreme Court has recognized that avoiding these complications is one of the legitimate state interests underlying the English language proficiency requirement set forth in § 51-217 (a) (3). See *State* v. *Gibbs*, 254 Conn. 578, 599, 758 A.2d 327 (2000) ("[t]he enormous additional expense that the state would incur were it required to provide interpreters for jurors, and the impact on the functioning of the jury, particularly during deliberation, certainly represents a compelling state interest").

In sum, a searching review of the record reveals that the court's finding that E.F. was unable to speak English well enough to satisfy the requirements of § 51-217 (a) (3) has factual support, including the court's opportunity to directly observe and listen to E.F. Accordingly, that finding was not clearly erroneous, and the court did not abuse its wide discretion in granting the state's challenge for cause. Thus, I would affirm the judgment of the trial court and find it unnecessary to reach the question of lack of prejudice, upon which the majority has affirmed the judgment.

I therefore respectfully concur in the result.

[1] E.F.'s juror questionnaire was not made part of the record on appeal.

[2] The state further contended that to the extent that E.F.'s omissions on his juror questionnaire were not attributable to his lack of proficiency in English, he was still subject to disqualification for failing to fully complete the questionnaire.

[3] The defendant also claims that E.F.'s excusal from the jury panel consti-

tuted discrimination against E.F. in the exercise or enjoyment of his civil or political rights because of his race, ancestry, and national origin, in violation of article first, § 20, of the Connecticut constitution, as amended by articles five and twenty-one of the amendments. Although I acknowledge that "jurors have a separate and independent interest in participating in the trial process, and that the defendant has third party standing to assert that interest"; *State* v. *Patterson*, 230 Conn. 385, 393, 645 A.2d 535 (1994); the defendant has devoted, in his main brief, only a single paragraph devoid of citation to any legal authority or analysis to his constitutional claim. "It is well settled that [w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error [that] are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Clelford* v. *Bristol*, 150 Conn. App. 229, 233, 90 A.3d 998 (2014). Accordingly, I deem this claim abandoned, and do not review it.

Additionally, it is prudent to note, so as to avoid any confusion about the nature of the defendant's claims, that the defendant has not claimed that the prosecutor improperly challenged E.F. on the basis of his race, in violation of *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

---